Isaacs Holding Corp., a domestic corporation,
Plaintiff-Respondent,†

v.

Premiere Property Group, LLC, a domestic limited liability company, Kelly J. Hansen, and Jill M. Hansen, Defendants-Respondents,

Daniel P. Gaugert and Gayle J. Gaugert, Defendants-Appellants,

Waukesha State Bank, Defendant.

Court of Appeals

*Nos. 03–1733, 03–2196. Submitted on briefs May 17, 2004.— Decided August 25, 2004.*

2004 WI App 172

(Also reported in 687 N.W.2d 774.)

† Petition to review denied 11-17-2004.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joseph C. Niebler, Sr.* of *Niebler & Muren, S.C.*, Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Roger L. Pettit* of *Petrie & Stocking S.C.*, Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J. This case involves a dispute over which party's interest in 113 acres of land (the

Property) located in the Town of Ottawa, Waukesha County is the superior interest. Daniel P. Gaugert and Gayle J. Gaugert appeal a circuit court decision to deny their motion for entry of judgment for specific performance granting them right of first refusal to the Property pursuant to their affidavit of interest in real estate for right of first refusal recorded on March 9, 1995. The Gaugerts argue that Premiere Property Group, LLC, and Premiere's registered agent, Jeffrey J. Hansen, and Kelly J. and Jill M. Hansen (the Hansens), had actual knowledge of the Gaugerts' prior interest in the Property. Thus, they contend that the circuit court's ruling with respect to Premiere and the Hansens is contrary to the mandate given by the supreme court in *Gaugert v. Duve*, 2001 WI 83, 244 Wis. 2d 691, 628 N.W.2d 861 (hereinafter, *Gaugert III*), which stands for the rule that a prior interest holder defeats a pendente lite interest[1] holder who had actual knowledge of the prior interest.

¶ 2. The Gaugerts also submit that Isaacs Holding Corp. (Isaacs), to which Premiere conveyed an interest in the Property as mortgagee, is barred by the principle of res judicata (hereinafter, claim preclusion) from challenging the prior ruling ordering specific performance in favor of the Gaugerts. The Gaugerts argue that the chain of title is not confined to the tract index and that although there was an error in the legal description of the property, it was an "obvious" error and is therefore not fatal to constructive notice.

¶ 3. Finally, the Gaugerts contend that Issacs had actual notice of the Gaugerts' prior claim.

---

[1] See footnote 3, which explains the term "pendente lite" and related concepts.

¶ 4. We agree with the Gaugerts' arguments. We reverse and remand with directions for the trial court to order specific performance forthwith.

¶ 5. *Facts.* The facts are undisputed. In 1988, the Gaugerts purchased from Howard E. Duve (Duve) a thirty-six acre parcel of real estate located in the Town of Ottawa. Contemporaneously, they obtained an option of first refusal on the Property. On March 9, 1995, believing that Jeffrey Hansen was taking steps to develop the Property, the Gaugerts recorded an affidavit of interest in real estate for right of first refusal with regard to the Property. Duve, notwithstanding the Gaugerts' option, entered into an offer to purchase contract with Jeffrey Hansen. The Gaugerts sued Duve and Jeffrey Hansen seeking specific performance of their contract. The Gaugerts also filed a statutory lis pendens pursuant to WIS. STAT. § 840.10 (2001–02).[2] After a bench trial, the circuit court denied specific performance and dismissed the complaint. The Gaugerts filed an appeal.

¶ 6. Following the Gaugerts' filing of the appeal, but before we issued our decision, the circuit court discharged the Gaugerts' statutory lis pendens. The Gaugerts did not obtain a stay of the discharge order, nor did they seek an injunction prohibiting the sale of the Property from Duve to Premiere and its agent Jeffrey Hansen.

¶ 7. Sometime prior to May 23, 1997, while the appeal was still pending, Jeffrey Hansen assigned his offer to purchase to Premiere and his two brothers, Kelly and Jay. On May 23, 1997, Duve conveyed the Property to Premiere. Premiere and Jeffrey Hansen, by

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

virtue of being an agent of Premiere, had by now entered into a Real Estate Mortgage Agreement with Isaacs, the holding corporation lender, which secured its loan to Premiere for the Property.

¶ 8. On February 25, 1998, we issued our decision in *Gaugert v. Duve*, 217 Wis. 2d 164, 579 N.W.2d 746 (Ct. App. 1998) (hereinafter, *Gaugert I*), which reversed and remanded the case to the circuit court with directions to order specific performance. On March 16, 1998, the Gaugerts filed a motion with us seeking a temporary injunction to prevent Premiere from developing the Property. On April 2, 1998, we granted temporary relief because of our concern that the effectiveness of our decision would be implicated if the status quo were changed. While this motion was pending, Premiere filed a petition for review of *Gaugert I*, which the supreme court denied on May 18, 1998. The file was remitted to the circuit court on May 21, 1998. The Gaugerts filed a motion for entry of judgment on June 2, 1998.

¶ 9. Of particular importance to the issue now before us, Isaacs filed a motion to intervene.

¶ 10. Following our directions on April 2, 1998, the Gaugerts filed a motion in the circuit court seeking a temporary injunction to maintain the status quo by preventing Premiere from altering the character of the Property. In response, Premiere asked the court to deny the Gaugerts' motion and to determine the appropriate remedy the Gaugerts could seek because Duve no longer owned the Property. A hearing was conducted on the motions on April 23, 1998, and the court issued a temporary injunction prohibiting Premiere and Duve from taking steps to develop the real estate.

¶ 11. On June 2, 1998, the Gaugerts filed a motion seeking to enforce the mandate in *Gaugert I* by the issuance of an order for specific performance. In the

478

motion, they also sought to implead Premiere as a party-defendant. Premiere countered with a motion seeking an order requiring the Gaugerts to post a bond as security for the temporary injunction and an order "determining the appropriate remedy for the plaintiffs [Gaugerts] as a result of the sale of the real estate" from Duve to Premiere. A hearing was conducted.

¶ 12. On September 23, 1998, despite our reversal and direction to order specific performance upon remand, the circuit court again denied the Gaugerts' request for specific performance and dissolved the temporary injunction that had been granted against Duve and Premiere. The court reasoned that the Gaugerts abandoned their right to specific performance by failing to seek a stay of the judgment and order discharging the lis pendens. The court concluded that it could not order Premiere, a third-party purchaser, to convey the Property to the Gaugerts. In addition, the court dismissed all other pending motions, including Isaacs' motion to intervene, on the grounds that they were moot.

¶ 13. Isaacs did not appeal from the circuit court's denial of its motion to intervene.

¶ 14. The Gaugerts, however, brought a second appeal on October 19, 1998. In addition to a renewed request for specific performance, the Gaugerts requested a leave to amend the complaint to implead Premiere as a party-defendant. Subsequently, they also filed a second lis pendens and a proffered judgment of specific performance. The Gaugerts argued that the common-law doctrine of lis pendens provides protection even if they did not seek a stay pending the appeal. They reasoned that under the common law, the real estate remains in the possession of the court so the court can enforce the final judgment. Therefore, until they have exhausted all levels of review, the real estate

479

remains subject to the jurisdiction of the court. According to their argument, a purchaser of the real estate, who has actual knowledge of active litigation involving the real estate, takes title at his or her own peril. Given that Jeffrey Hansen had actual knowledge of the ongoing litigation, the Gaugerts insisted that Jeffrey Hansen took title subject to the risk that they could prevail on appeal. They maintained there was no need to seek a stay or relief from the judgment pending appeal because under the common law, the court has the authority to enforce its judgment even if the real estate has been sold to a third party. They concluded that because their right to specific performance was upheld on appeal and Premiere and Jeffrey Hansen, as its agent, purchased the real estate at their own peril, Premiere and Jeffrey Hansen can be required to transfer the real estate to them under the common-law doctrine of lis pendens.

¶ 15. On December 18, 1998, the Gaugerts filed a petition for a writ of mandamus to compel the circuit court to enter a judgment granting specific performance by Duve in compliance with our mandate in *Gaugert I*. We issued a writ of mandamus on January 28, 1999, directing the court to "enter judgment granting the Gaugerts specific performance of the right of first refusal option contract by conveyance of the property." *State ex rel. Gaugert v. Circuit Court for Waukesha County*, No. 98–3595–W, unpublished order (Wis. Ct. App. Jan. 28, 1999). We reasoned that our decision and mandate in *Gaugert I* did not require any further findings and that after remand all the circuit court could do was grant the Gaugerts the specific performance they sought.[3]

---

[3] We acknowledged that we had been made aware of the

¶ 16. On March 11, 1999, during the pendency of their second appeal, the Gaugerts filed a petition for a writ of mandamus seeking from this court an order to compel the circuit court to order specific performance against Duve and Premiere. We denied the petition, concluding that our January 28, 1999 writ of mandamus was "limited to the circuit court's obligation to comply with the mandate" to order Duve to specifically perform by conveying the property to the Gaugerts. *State ex rel. Gaugert v. Circuit Court for Waukesha County*, No. 99–0645–W, unpublished order (Wis. Ct. App. Mar. 16, 1999).

¶ 17. On January 26, 2000, we dismissed the Gaugerts' second appeal in *Gaugert v. Duve*, 2000 WI App 34, 233 Wis. 2d 190, 607 N.W.2d 310 (hereinafter, *Gaugert II*). We concluded that in the absence of a stay, the conveyance of the real estate from Duve to Premiere, and Jeffrey Hansen as its agent, rendered the appeal moot. *Id.*, ¶ 28. We determined that because the Gaugerts did not obtain a stay, they were not entitled to the benefits of the common-law doctrine of lis pendens,[4]

lifting of the lis pendens and the subsequent sale of the property, but declined to consider those events because they were outside of the record.

[4] The common-law doctrine of lis pendens is based upon the maxim *pendente lite nihil innovetur*, which means, "[n]othing should be changed during the pendency of an action." *Belleville State Bank v. Steele*, 117 Wis. 2d 563, 571, 345 N.W.2d 405 (1984). Generally, the doctrine prohibits the defendant-owner from transferring all or part of his or her interest in the property during the course of the litigation to the detriment of the plaintiff's rights. *Id.* The prohibition arose by the provision that a third-party purchaser, *lienor pendente lite*, was bound by any judgment as though he or she was a party to the suit. *Id.* at 571–72. The common-law doctrine did not require notice to the public of the dispute, other than what was in the records of the

481

court. *Id.* at 571. The third-party transferee was charged with constructive notice of the litigation regardless of whether he or she received actual notice. *Id.*

The object of lis pendens is not, primarily, notice, but to hold the subject of the suit—the res—within the power of the court, so as to enable it to pronounce judgment upon it. *Brown v. Cohn*, 95 Wis. 90, 93, 69 N.W. 71 (1896). It is deemed that every person is bound to know the law, and to take notice of what is transpiring in the courts, from the time when the process is served and the complaint filed until the final judgment is entered. *Id.* The purchaser pendente lite is deemed to be represented in the litigation by his or her vendor, and the purchaser is just as much bound by the final judgment rendered as is the party whose right he or she purchases. *Id.*

The reasons underlying the common-law doctrine are grounded in public policy and include the efficient administration of justice. If property, which was the subject of litigation, could be alienated, the court's exercise of jurisdiction would be frustrated and litigants would be forced into an unending series of lawsuits against persons acquiring the property during litigation. To protect courts' jurisdiction and give finality to judgments, the pendente lite purchaser or encumbrancer was bound by the outcome of the litigation. *Belleville State Bank*, 117 Wis. 2d at 571–72.

Forty-seven states have codified the common-law doctrine. *Gaugert v. Duve*, 2000 WI App 34, ¶ 26, 233 Wis. 2d 190, 607 N.W.2d 310 (*Gaugert II*). Wisconsin did so in Wis. Stat. § 840.10. The statutes typically provide that the doctrine will not operate unless the plaintiff files a notice of lis pendens in the land records of the county in which the property is situated. Under a statute, the filing operates as constructive notice to all subsequent purchasers. *See* Janice Gregg Levy, *Lis Pendens and Procedural Due Process: A Closer Look After Connecticut v. Doehr*, 51 Md. L. Rev. 1054, 1057 (1992). How the statute affects the common-law doctrine is a mixed bag. In some states, the statute abrogates the common law, while in other states it

and the purchaser is just as much bound by the final judgment rendered as is the party whose right he or she purchases. *See Belleville State Bank v. Steele,* 117 Wis. 2d 563, 571–72, 345 N.W.2d 405 (1984). We concluded that the circuit court could not order specific performance because title is in the name of a third person. We stated that in order to be able to do so, the Gaugerts were required to obtain a stay pending appeal to protect their claim against purchasers of the Property, including Premiere. *Gaugert II,* 233 Wis. 2d 190, ¶ 28.

¶ 18. The Gaugerts filed a petition for review. The petition was granted and on July 2, 2001, the supreme court released *Gaugert III. Gaugert III* reversed *Gaugert II* and condoned our initial ruling in *Gaugert I* mandating specific performance in favor of the Gaugerts. The supreme court relied on the common law of lis pendens: In Wisconsin, statutory lis pendens was "intended to be supplemental to the common law, and not to repeal it. So, the common law will govern in all cases not covered by the statute." *Brown v. Cohn,* 95 Wis. 90, 93, 69 N.W. 71 (1896). The supreme court held that the doctrine of common-law lis pendens continued to protect the interests of the Gaugerts, even though statutory lis pendens had been discharged and the Gaugerts had not sought an order staying the discharge pending their appeal, and this entitled them to specific performance.

¶ 19. On August 6, 2001, one month after the release of *Gaugert III,* Isaacs commenced a declaration-of-rights suit that is the subject of the case at bar (the

merely restricts the doctrine to cases in which notice was properly filed. *See id.* at 1058. In Wisconsin, [the statute] was evidently intended to be supplemental to the common law, and not to repeal it. So, the common law will govern in all cases not covered by the statute. *Brown,* 95 Wis. at 93.

Isaacs Action). Isaacs sought: (1) a declaration that Isaacs' interest in the Property is superior to the interests of Premiere, the Gaugerts, the Hansens, Wauwatosa Savings Bank and Waukesha State Bank;[5] (2) a judgment of foreclosure and sale of the Property; and (3) a money judgment against Premiere for defaulting on the Isaacs mortgage note. Isaacs argued that an identification error, made by the Gaugerts, in several legal documents of record caused the documents to be outside the "chain of title" and therefore did not impart notice of pending adverse claims to bona fide encumbrancers. Thus, Isaacs claimed that as of the time it extended credit to Premiere, it could not have had "actual notice" of a pending action by the Gaugerts affecting the Property.

¶ 20. Specifically, Isaacs argued that the Gaugerts' affidavit of interest, their complaint and their lis pendens were "conveyances, transactions or events not in the chain of title of the [Property], within the meaning of sec. 706.09(1), Stats."[6] because:

---

[5] Wauwatosa Savings and Loan was dismissed from the action by way of stipulation of all parties on March 19, 2003.

[6] WISCONSIN STAT. § 706.09(1) provides in relevant part:

> **Notice of conveyance from the record. (1)** WHEN CONVEYANCE IS FREE OF PRIOR ADVERSE CLAIM. A purchaser for a valuable consideration, without notice as defined in sub. (2), and the purchaser's successors in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:
>
> . . . .
>
> (b) *Conveyance outside chain of title not identified by definite reference.* Any conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference

[the Affidavit,] the Complaint and Lis Pendens did not contain a definite reference to the [Property], but rather described the real estate affected thereby as situated in "Town 7 North," while the [Property] is actually located in "Town 6 North," as correctly stated in the May 23, 1997 mortgage from defendant Premiere to Isaacs.

¶ 21. Isaacs also argued that the second lis pendens was a conveyance, transaction or event not in the chain of title of the Property because it "did not contain a definite reference to the [Property] . . . and because the parties' names in the caption would not have been traceable to the [Property] by use of an alphabetical index within the meaning of sec. 706.08, Stats."

¶ 22. Isaacs contended that, given these errors, at the time it extended credit to Premiere, there was "no conveyance, transaction or event" relating to the Gaugert action or to the Gaugerts' claimed interest in the Property in the chain of title of the Property within the meaning of WIS. STAT. § 706.09(1). Isaacs further contended that, as of the time it extended credit to Premiere, it did not have "actual notice" within the meaning of WIS. STAT. §§ 706.08[7] and 706.09, or otherwise, of a pending action by the Gaugerts affecting the Property.

in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such interest, the real estate affected, and the approximate date of such conveyance, transaction or event.

[7] WISCONSIN STAT. § 706.08 provides in relevant part:

¶ 23. At approximately the same time the Isaacs Action was filed, the Gaugerts again filed a motion for a proffered judgment of specific performance, basing it on the supreme court's *Gaugert III* decision. The Gaugerts provided notice of this motion to the parties in *Gaugert I* and the contested interest holders in the Property (i.e., Premiere, Isaacs, the Hansens, Waukesha State Bank and Wauwatosa Savings and Loan); each of them specially appeared and objected to the jurisdiction of the court over them because they were not parties to the *Gaugert II* action. They also objected to entry of any judgment as requested by the Gaugerts.

¶ 24. On November 6, 2001, while the Isaacs Action was still pending, the circuit court denied the

---

**Nonrecording, effect. (1)** (a) Except for patents issued by the United States or this state, or by the proper officers of either, every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.

(b) A conveyance of mineral interests which is not recorded in the office of the register of deeds of the county in which the land is located, within 30 days after it is signed by the lessor, is void.

(2) Where a public tract index or abstract of title index is maintained, an instrument properly indexed therein and recorded at length at the place there shown shall be deemed to be duly recorded for purposes of this section, despite any error or omission in the process of including the instrument, or prior instruments in the same chain of title, in other records. Where an instrument is not properly indexed in such tract or abstract of title index, or where such index is not publicly maintained, the instrument shall be deemed to be duly recorded only if the instrument, together with prior instruments necessary to trace title by use of alphabetical indexes by names of parties, are properly indexed in such alphabetical indexes, and recorded at length at the places there shown. Wherever an instrument is duly recorded hereunder, its record shall be effective as of the date and hour at which it is shown by the general index to have been accepted for record.

Gaugerts' latest motion for proffered judgment and instead, entered a second judgment of specific performance only against Duve. The Gaugerts filed a petition for writ of mandamus with the supreme court. On January 29, 2002, the supreme court held the writ of mandamus in abeyance pending the trial court's decision on the Isaacs Action.

¶ 25. On March 7, 2002, in response to the complaint in the Isaacs Action, the Gaugerts filed an answer and counterclaim against Isaacs and a cross-claim against Premiere, the Hansens, Wauwatosa Savings Bank and Waukesha State Bank. The answer pled an affirmative defense that all of the parties to the action acquired their respective interests in the Property during the pendency of *Gaugert I*, had actual or constructive notice of the *Gaugert I* action, and accordingly, are bound by the judgment of specific performance against their predecessors in title and in favor of the Gaugerts. The counterclaim and cross-claim sought a declaration of rights that the Gaugerts' interest in the Property is superior to the interests of all other parties and an order to require the other parties to convey their interests in the Property or an order of judicial conveyance clearing title to the Property.

¶ 26. Seven months later, in October 2002, the Gaugerts filed a motion for summary judgment against Isaacs in the still pending Isaacs Action. In December 2002, Isaacs countered by filing a motion for partial summary judgment on claim I and claim II:

> Declaring the interest of Isaacs in the [Property] is superior to the interests of the Gaugerts; and

> Entering Judgment of Foreclosure against Premiere Property Group, L.L.C., on Isaacs' Note.

487

¶ 27. Five months later, on May 13, 2003, the circuit court made its determination in the Isaacs Action. By order, it denied the Gaugerts' motion for summary judgment and granted Isaacs' motion for partial summary judgment. The court held that Isaacs' mortgage, securing its loan to Premiere for the Property, was superior to all other interests in the Property. The court concluded that Isaacs was a bona fide encumbrancer for value and without actual or constructive knowledge of the interest that the Gaugerts claim in the Property. The court also granted Isaacs' motion seeking default judgment of foreclosure against the remaining defendants. Finally, the court stayed the effects of its order pending the supreme court's resolution of the Gaugerts' petition for writ of mandamus.

¶ 28. In response to this decision, the Gaugerts petitioned the supreme court to order the record in the Isaacs Action consolidated with their pending petition for writ of mandamus and they renewed their request that the supreme court grant the writ of mandamus. Alternatively, the Gaugerts requested that the supreme court grant their motion to bypass an appeal before us and accept a direct appeal of the Isaacs Action.

¶ 29. On June 27, 2003, after considering the prerequisites for issuance of a writ of mandamus, the supreme court dismissed the Gaugerts' petition for consolidation of the Isaacs Action with the writ of mandamus. The court reasoned that the remedy of mandamus was no longer available to the Gaugerts because they now had a remedy: they could appeal the adverse order rendered in the Isaacs Action. The Gaugerts had not yet availed themselves of this remedy. Therefore, the court concluded, relief by mandamus would be premature.

¶ 30. Accordingly, on June 30, 2003, the Gaugerts filed a notice of appeal from the adverse order in the Isaacs Action. The circuit court later incorporated this order into a second order filed on July 23, 2003. The Gaugerts filed a notice of appeal from the second order as well. On October 27, 2003, we ordered the appeals consolidated. It is the decision rendered in the circuit court's orders that is now before us.

¶ 31. *Standard of Review.* The resolution of this appeal requires the interpretation and application of the common-law doctrine of lis pendens, the statutory lis pendens scheme, and the appellate rules governing the effect of judgments during an appeal. This presents questions of law that we review de novo. *See State v. Hansford,* 219 Wis. 2d 226, 246, 580 N.W.2d 171 (1998).

¶ 32. ***Discussion, law and additional facts.*** The Gaugerts submit four arguments. First, they argue that Premiere and the Hansens had actual knowledge of the Gaugerts' prior interest, and therefore, the circuit court's ruling with respect to Premiere and the Hansens is contrary to the mandate from the Wisconsin Supreme Court in *Gaugert III* and long-standing precedents of the supreme court. Second, they contend that Isaacs had inquiry/actual notice of the Gaugerts' prior claim. Third, they argue that Isaacs is barred by the principle of claim preclusion from challenging the prior rulings ordering specific performance in favor of the Gaugerts. Fourth, they assert that the chain of title is not confined to the tract index, and the obvious error in the legal description of the Property is not fatal to constructive notice.

¶ 33. Isaacs counters that the circuit court was correct in granting summary judgment to Isaacs for three reasons. First, as a matter of law, the Gaugerts'

statutory lis pendens did not impart constructive notice of the Gaugerts' interest in the Property. Second, as a matter of law, Isaacs had no actual knowledge of the Gaugerts' lawsuit. Third, as a matter of law, a discharged lis pendens does not give notice of an interest in real estate.

¶ 34. Isaacs also argues that it is not bound by *Gaugert III*. Isaacs supports this contention with the following assertions: Isaacs is not in privity with Premiere or its agent, Jeffrey Hansen; Isaacs' failure to appeal from the order denying intervention does not make it bound to *Gaugert III*; Isaacs is not bound by *Gaugert III* because the *Gaugert III* decision specifically did not decide the interests of third parties. We do not agree with any of Isaacs' arguments and reverse the circuit court based on our conclusion that the Gaugerts are entitled to specific performance.

■

¶ 35. Unlike the history of this case, our reasons for reversal are uncomplicated. First, we accept that Premiere and the Hansens had actual knowledge of the Gaugerts' prior interest: they admitted to actual knowledge and the trial court so found.

¶ 36. Second, we agree with the Gaugerts that Isaacs had actual knowledge of the Gaugerts' prior claim. Isaacs' attorney testified that, before the closing of Isaacs' mortgage to Premiere, he was told by Premiere's lawyer that a claim had been made by the Gaugerts against Duve regarding the Property, and the claim had been dismissed.

¶ 37. Futhermore, Isaacs established its actual knowledge of the Gaugerts' prior claim when it filed a motion to intervene upon remittitur of *Gaugert I*. Isaacs' motion was denied. Under Wis. Stat. § 803.09(1),

Isaacs had a right to intervene. *See* § 803.09;[8] *see also Wengerd v. Rinehart*, 114 Wis. 2d 575, 582, 338 N.W.2d 861 (Ct. App. 1983). And, after its motion was denied, Isaacs retained the right to intervene in the Gaugerts' appeal, even after the time for filing a notice of appeal had passed. *See City of Madison v. WERC*, 2000 WI 39, ¶ 12, 234 Wis. 2d 550, 610 N.W.2d 94.

■

¶ 38. Third, we agree with the Gaugerts that Isaacs can no longer challenge the prior rulings ordering specific performance in favor of the Gaugerts. Over the years, courts have evolved principles that preclude relitigation of matters that have already been decided. These principles are subsumed in the doctrines of claim preclusion and issue preclusion, which were formerly known as res judicata and collateral estoppel, respectively. *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 235, 554 N.W.2d 232 (Ct. App. 1996). Under claim preclusion, a final judgment in an earlier matter is conclusive upon the parties in that earlier matter *and those in privity* with those parties, and the final judgment governs all issues that were either litigated or might have been litigated. *Id.*

---

[8] Under WIS. STAT. § 803.09(1), Isaacs met the statutory requirements for intervention as a matter of right. A movant must meet four requirements to intervene as a matter of right: (1) the motion to intervene must be timely, (2) the movant must claim an interest in the subject of the action, (3) the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, and (4) the existing parties do not adequately represent the movant's interest. *Id.*; *Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 471, 516 N.W.2d 357 (1994).

¶ 39. Issue preclusion, on the other hand, can apply even though there is not an identity of parties in the earlier and later matters so long as the issue of law or fact for which preclusive effect is sought has been actually litigated and decided in a prior action and reduced to judgment. *Id.* Although issue preclusion might also apply here, a matter that we do not decide, we believe claim preclusion does apply.

¶ 40. Isaacs, having sat on its right to appeal the denial of its motion to intervene, is barred by the principle of claim preclusion from challenging the prior rulings ordering specific performance in favor of the Gaugerts. In *Belleville,* like here, a mortgage was recorded after a lis pendens; there, the supreme court held the mortgage to be invalid. The court explained its rationale:

> Since the mortgage was recorded after the lis pendens, the Belleville State Bank is a subsequent encumbrancer, and its interest in the property is subject to the outcome of the Illinois divorce action. "The purchaser *pendente lite* is deemed to be represented in the litigation by his [or her] vendor and the purchaser is just as much bound by the final judgment rendered as is the party whose right he [or she] purchases." We conclude that the mortgage executed by Flavia Steele to the Bank is ineffective since title was confirmed, free and clear, in Wendell Steele.

*Belleville State Bank,* 117 Wis. 2d at 578 (citations omitted). In other words, a prior action against the pendente lite claimant's predecessor evokes the principles of claim preclusion as to the pendente lite claimant even though such pendente lite claimant is not a party to the litigation between the prior interest holder

and the pendente lite claimant's predecessor. *See id.* Applied to our facts, the prior action against Duve has already been judged as to Isaacs, Premiere and the Hansens even though none were a party to the previous litigation (i.e., *Gaugert I*) between the Gaugerts, Duve and Jeffrey Hansen.

¶ 41. Additionally, *Gaugert III* instructs that the circuit court's discharge of the statutory lis pendens did not affect the Gaugerts' rights because they retained a common-law lis pendens. The language of Wis. Stat. § 808.07 does not convey intent to abandon the application of common-law principles of lis pendens to the parties to litigation concerning real property. *Gaugert III*, 244 Wis. 2d 691, ¶ 41. It is a rule of statutory construction that an intent to change the common law must be clearly expressed. *Id.* Common-law lis pendens operates until the time to seek an appeal has expired or until there is an exhaustion of the right to appeal. *Id.*, ¶ 29.

¶ 42. As a result, the circuit court's discharge of the statutory lis pendens did not affect the Gaugerts' rights. The circuit court had no authority to discharge the common-law lis pendens because a common-law lis pendens survives until the case result is unalterable.[9] *Gaugert III* lays to rest any further claim that the Gaugerts needed to seek a stay to preserve their rights. It was not necessary to enjoin the sale of the Property by Duve to Premiere. Such a step would have been a redundancy under the common law of lis pen-

---

[9] In a recent letter, the Gaugerts provided this court with a citation to supplemental authority on this point. Because the additional authority cited in the Gaugerts' letter does not alter the outcome of our decision, we need not address it further.

dens: Premiere purchased the Property at its own peril and was subject to the final judgment of the courts upon the Gaugerts' claim. Isaacs, as mortgagee, is in privity and is bound by the final judgment as well.[10]

¶ 43. This case has had a long and winding history. The mandate of the supreme court is clear: the Gaugerts are entitled to specific performance. It is now time for all litigation concerning the Property to lie in repose. We direct the circuit court on remand to issue any and all orders accomplishing that end.[11]

*By the Court.*—Orders reversed and causes remanded with directions.

---

[10] Given our resolution of this appeal on the first three issues, we need not address the fourth issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

[11] WISCONSIN STAT. § 808.08(1) directs, in part:

When the record and remittitur are received in the trial court:

(1) If the trial judge is ordered to take specific action, the judge shall do so *as soon as possible.* (Emphasis added.)