S & H, INC., Appellant, v. SLADKY, Respondent.

*November 1—November 29, 1966.*

688

For the appellant there was a brief by *Edwards, Hafner & McDonald* of La Crosse, and oral argument by *Roger W. Hafner.*

For the respondent there was a brief by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *William ,P. Skemp.*

BEILFUSS, J. The major issue confronting the court is whether parol evidence is admissible to vary or explain the terms of the written instruments.

In its brief the plaintiff sets out the following as its basic argument:

"It is the contention of the Plaintiff that the Court was in error in finding that parol evidence would not be admissible to vary the terms of the written agreement. The contention was made, and is now made that evidence as to the term 'split-dollar plan' would not have the effect of varying the terms of the contract agreement between the parties, but would assist the Court in determining the nature and extent of the agreement. The real issue is what was the nature, extent and the terms of the agreement between the parties under which the Plaintiff agreed to pay the substantial portion of the premiums on the life insurance policy from the date of the policy issuance up until the date of the termination of employment by the Defendant."

In *Cliver v. Heil* (1897), 95 Wis. 364, 367, 70 N. W. 346, the Wisconsin supreme court stated:

"It would have the effect to add a provision to the contract that it did not contain. The evidence was clearly

inadmissible. [Cases cited.] Where a contract has been reduced to writing, which purports to contain the whole contract, and it is not apparent from the writing itself that anything is left out, to be supplied by extrinsic evidence, parol evidence to vary or add to its terms is not admissible."

In *Georgiades v. Glickman* (1956), 272 Wis. 257, 264, 265, 75 N. W. (2d) 573,[1] this court adopted the following test to determine whether the language of a contract is unambiguous:

"3 Williston, Contracts (rev. ed.), pp. 1807, 1808, sec. 629, suggests that the test, of whether a written contract is so unambiguous as not to render admissible any testimony of surrounding circumstances, is dependent on whether the words used are so clear that the offered evidence 'would not persuade any reasonable man that the writing meant anything other than the normal meaning of its words would indicate.' The author quotes with approval the following statement made by Judge LEARNED HAND in *Eustis Mining Co. v. Beer, Sondheimer & Co.* (D. C. 1917), 239 Fed. 976, 985:

" 'All the attendant facts constituting the setting of a contract are admissible, so long as they are helpful; the extent of their assistance depends upon the different meanings which the language itself will let in. Hence we may say, truly perhaps, that, if the language is not ambiguous, no evidence is admissible, meaning no more than that it could not control the sense, if we did let it in; indeed, it might "contradict" the contract—that is, the actual words should be remembered to have a higher probative value, when explicit, than can safely be drawn by inference from surroundings. Yet, as all language will bear some different meanings, some evidence is always admissible; the line of exclusion depends on how far the words will stretch, and how alien is the intent they are asked to include.'

"Professor Corbin, in his recent excellent work on the law of contracts, states (3 Corbin, Contracts, p. 70, sec. 542):

---

[1] Also see *Hanz Trucking, Inc., v. Harris Brothers Co.* (1965), 29 Wis. (2d) 254, 138 N. W. (2d) 238.

" 'There are, indeed, a good many cases holding that the words of a writing are too "plain and clear" to justify the admission of parol evidence as to their interpretation. In other cases, it is said that such testimony is admissible only when the words of the writing are themselves "ambiguous." *Such statements assume a uniformity and certainty in the meaning of language that do not in fact exist; they should be subjected to constant attack and disapproval.'* (Emphasis supplied.)

"Among the surrounding circumstances that are admissible for the purpose of interpreting the language of a contract are the *'acts and statements of the parties antecedent to and contemporaneous with the making of the contract.'* 3 Corbin, Contracts, p. 72, sec. 543."

Assuming that affidavits of the plaintiff in opposition to the motion for summary judgment can be considered,[2] they do not, in our opinion, raise a material issue of fact sufficient to defeat the motion for summary judgment. In fact, the affidavit of Mr. Ritter contains the supplementary agreement which fortifies Sladky's position.

The plaintiff argues that the term "Split Dollar Plan" has a definite meaning in the insurance industry and that parol evidence should be admitted to show this meaning.

The phrase "Split Dollar Plan with S & H Sport Shop" in the application, standing alone, is not clear. It does not define the rights and obligations of the parties and as such it is ambiguous. However, when the application, the policy, and the supplemental agreement of October 24, 1956, are construed together as they must be, the meaning of the "Split Dollar Plan," insofar as S & H and Sladky intended it to be, is clear. Neither the application nor the policy indicate any ownership or right to the proceeds to be in S & H. On the contrary, the application and the policy clearly indicate that Sladky is the owner and that his wife and children are the sole beneficiaries.

---

[2] It is probable that affidavits offered by the plaintiff do not comply to the standards summarized in *Leszczynski v. Surges* (1966), 30 Wis. (2d) 534, 141 N. W. (2d) 261.

The agreement of October 24, 1956, in clear and unambiguous language, defines the rights and duties of S & H under the "Split Dollar Plan." In return for the partial payment of premiums S & H's rights were, "In the event of death occurring to Mr. Sladky, the S&H Sport Shop Inc., Will be reimbursed whatever amount they have contributed to this program." Regardless of what meaning the insurance industry may generally attribute to a "Split Dollar Plan," the meaning and rights of the parties to this action are clearly defined by the agreement of October 24, 1956. The language of the agreement is simple, clear, complete, and unambiguous insofar as it defines the rights of S & H. It has a right of reimbursement at the time of death.

There is nothing in the application, policy, or supplementary agreement to in any way suggest an uncertainty or any agreement as to S & H's right to cash surrender value or any other reimbursement prior to the death of Mr. Sladky.

As stated by the trial court:

"This is not a request for reformation. Plaintiff does not contend that there was an actual agreement as to rights to cash surrender value in event of termination of employment and that through mistake such agreement was not incorporated into the document. Plaintiff is attempting to add to the contract.

"Such document must have been the result of some thinking and effort. It was drafted on insurance company stationery, relates specifically to the interpretation of the expression Split Dollar Plan and expresses the rights of the parties. It was signed by Sladky, and by Frank Billock, who was the President and General Manager of plaintiff corporation, and witnessed by Loomis, the agent who sold the policy.

"The language is clear and unambiguous without any indication on the face of the document that the parties intended provisions in addition to those expressed. Parol evidence is not admissible to add provisions or remake a contract.

" 'It would have the effect to add a provision to the contract that it did not contain. The evidence was clearly inadmissible. . . . Where a contract has been reduced to writing, which purports to contain the whole contract, and it is not apparent from the writing itself that anything is left out, to be supplied by extrinsic evidence, parol evidence to vary or add to its terms is not admissible.' *Cliver v. Hall*, 95 Wis. 364, 367." [3]

We agree with the trial court—the agreement is unambiguous and there are no material disputed facts to warrant a trial or prevent judgment for the defendant.

*By the Court.*—Judgment affirmed.

---

[3] Also see *Danielson v. Bank of Scandinavia* (1930), 201 Wis. 392, 230 N. W. 83; *Milwaukee Cold Storage Co. v. York Corp.* (1958), 3 Wis. (2d) 13, 87 N. W. (2d) 505; and *State ex rel. Siciliano v. Johnson* (1963), 21 Wis. (2d) 482, 124 N. W. (2d) 624.