Daniel P. GAUGERT and Gayle J. Gaugert, Plaintiffs-Appellants,

v.

Howard E. DUVE and Jeffrey J. Hansen, Defendants-Respondents.†

Court of Appeals

*No. 97–0355. Submitted on briefs December 8, 1997.—Decided February 25, 1998.*

(Also reported in 579 N.W.2d 746.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Raymond E. Krek* and *Ingrid A. Nelson* of *Krek & Associates, S.C.* of Jefferson.

On behalf of defendant-respondent Howard E. Duve, the cause was submitted on the brief of *James W. Hammes* of *Cramer, Multhauf & Hammes* of Waukesha.

On behalf of defendant-respondent Jeffrey J. Hansen, the cause was submitted on the brief of *E. Joseph Kershek* of *Kershek Law Offices* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J.    This case concerns that part of the law known as "election of rights." At law, when a contract is missing one of the essential elements which would make it binding, it is known as an "executory"

contract and a party is under no obligation to perform. But if a party "elects" to perform regardless of the contractual defect, the contract is "executed" and the party who made the election is thereafter bound. In this case, the trial court declined to enforce a written option of first refusal regarding the purchase of real estate, finding that there was no consideration and no meeting of the minds. The trial court further held that Howard E. Duve, the owner of the land, did not knowingly elect to make the contract enforceable. We reverse.

Both parties recount the various factual disputes existing between the parties dating back to the time the parties first met. It is unnecessary, however, to set forth all of the disputed historical facts because the trial court heard two days of testimony and later rendered detailed findings of fact in a bench decision. The trial court resolved the disputed historical facts and we will therefore recite the history supporting the trial court's findings because they are not clearly erroneous. *See Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

In the fall of 1988, Daniel P. Gaugert and his wife were looking for land in a rural setting to build a home. The Gaugerts knew Duve through Daniel's brother. Duve was the owner of a farm upon which he lived, and the Gaugerts became interested in purchasing some of that land. The parties met and eventually verbally agreed to a sale of 7.99 acres for a purchase price of $20,000. A written offer of purchase was signed by Duve memorializing the agreement. A survey was also completed.

Soon thereafter, the Gaugerts learned from a zoning specialist at the Waukesha County Parks and Land Use Department that they could not build a home on the parcel because the land was zoned as agricultural

and no homes could be built on agricultural parcels unless the parcel was at least thirty-five acres. Daniel immediately sought out Duve. He told Duve what he had just learned and said that the "whole deal was no good." Duve wanted to help him out. First, Duve offered to add some wetland which could not be used for farming. Duve said that all he did was pay taxes on that land. But both realized that the addition of the marshland would not be enough to total thirty-five acres. So, Duve offered to also add twelve acres past the wetlands. The Gaugerts wanted to know the additional price. According to Daniel, Duve replied, "Well, why don't we just keep the price the same. You're helping me out on taxes and so forth . . . [i]t will help me." Eventually, the parties agreed that no additional price would be added, but the Gaugerts were going to let Duve use the twelve-acre field for cutting hay. After that there was a new survey of the property and a signed amended offer to purchase. The total acreage was now 36.33.

Thereafter, the Gaugerts became concerned about what would happen to the area surrounding the soon-to-be homestead if Duve were to pass away. The Gaugerts feared that the area could be sold off in "small little parcels." So, the Gaugerts went to their attorney and had him prepare an option for first refusal of Duve's farm. The first time Duve ever saw the option was at the closing on December 8, 1988. It was never discussed between the parties beforehand. The Gaugerts told Duve that it was a "first refusal for extra land." Duve signed the option. No consideration was discussed for this option at the closing, and no consideration was exchanged. When Duve encountered an acquaintance in the parking lot after the closing, he

explained his understanding of the option to be merely a right to make him an offer to purchase more property.

Years passed. While the record is replete with instances from which an inference can be drawn that relations between Duve and the Gaugerts cooled during this time, it is not important to relate this history. However, we note that the trial court did allude to certain instances as a foundation for finding that Duve was more credible than the Gaugerts.

In late 1994, the Gaugerts heard rumors that Duve was attempting to sell his farm. They called the courthouse and found out that their prior attorney had never recorded the option of first refusal on the Duve farm. They called that attorney and the attorney recorded it on March 9, 1995. On February 15, 1995, Jeffrey H. Hansen signed an offer to purchase Duve's existing farm, about 113 acres, for $390,000 with earnest money of $1000, with certain contingencies. Duve signed the offer. Hansen went to the town plan commission to have the property rezoned from agricultural to residential. This would allow houses to be built on three acres of land rather than thirty-five. As an interested neighbor, the Gaugerts received notice from the town plan commission regarding the rezoning request. The Gaugerts wrote Hansen to inform him of the option. The Gaugerts went to the plan commission meeting and informed the commission that they would be landlocked if the plan were to be approved. The commission replied that this was something they had to take up with Duve. The Gaugerts then sent a copy of the option to Duve and asked him in writing if they could have the chance to exercise the option. They received no response. The Gaugerts then contacted an attorney who wrote Duve demanding the right to exercise the option.

169

On June 14, 1995, the Gaugerts received in the mail a Notice of Right to Exercise Option of First Refusal. This notice was typewritten, came from a law office and was signed by Duve. It informed the Gaugerts that "[t]his notice is hereby given to Daniel P. Gaugert and Gale [sic] J. Gaugert by Howard E. Duve pursuant to the Option of First Refusal entered into on December 8, 1988." It explained that Duve had received an offer for the sale of the farmland and explained the terms and conditions of sale. At the end, the notice states: "Attached hereto to this notice and made a part hereof is the Option of First Refusal entered into between the parties on December 8, 1988."

In response, the Gaugerts' attorney mailed a $1000 check as earnest money. Included was a sale contract that Duve was asked to sign and return along with other documents. Hansen found out and removed his contingencies. The Gaugerts responded by removing their contingencies. Then on July 3, 1995, Duve's attorneys sent a letter to the Gaugerts' attorney informing of "some circumstances which surrounded the original real estate transaction." The letter went on to state that "[i]f the statements as relayed to us are true, then there probably was fraud connected with the 1988 transaction. . . . It also appears that the Option is invalid for lack of consideration." The letter continued, "We are in the process of investigating the circumstances surrounding these transactions." Then the letter concluded, "[o]n behalf of the Duves, we are rescinding the Right of First Refusal Option and any of the paperwork that resulted from it. We are also returning to you your check in the amount of $1000.00 which purports to be earnest money for the farm sale." This lawsuit followed and a trial to the court was had.

Based upon these historical facts, the trial court made three mixed findings of fact and law. First, the trial court determined that the Gaugerts had not defrauded Duve. Second, the trial court found that there was neither consideration exchanged nor was there a meeting of the minds regarding the option to purchase. As a result, the option was not enforceable. Third, it rejected the claim by the Gaugerts that when Duve sent them a notice of their right to exercise an option of first refusal, the signing and delivery of the notice acted as an election by Duve to execute the contract giving Gaugert a right to a notice of first refusal. The trial court understood the law regarding election of rights to be limited to situations where the contract is tainted with fraud, but the victim of fraud nonetheless elects to perform under the contract. The trial court considered the election of rights analysis to be irrelevant in light of its finding that there was no fraud.

Alternatively, the trial court decided that, even if election of rights applies to situations where there is a lack of consideration and a lack of mutuality, there was no election. The trial court opined as follows:

> [E]ven if the election of rights somehow would apply . . . a person who makes an election must be in a position from a legal standpoint to realize the consequences of what his actions are in terms of making an election, and the court would find that this transaction was not so far along with respect to the bouncing back and forth of these letters concerning Mr. Hansen's offer and Mr. Gaugert's offer and letters to the attorneys that Mr. Duve was not in a position to assess his situation on this particular document, which a copy of which he couldn't find, a copy of which we don't know if he kept or got, that he first saw at the time of closing in '88. Many years

171

> have passed, that the first time he was in a position to make any meaningful election which the law would operate under principles of fairness was when everybody sat down . . . and that resulted in the letter . . . written [by Duve's attorneys] concerning the allegations of fraud in the original transaction and . . . the failure of consideration . . . of the right of first refusal.

The trial court was apparently of the view that when a contract is unenforceable, any voluntary performance on the contract is not an election to forego the contract defect unless that party first understands that the contract is unenforceable and nonetheless decides to perform on the contract. Then, the trial court found that Duve sent the Notice of Right of First Refusal before knowing that the contract was actually unenforceable such that he had a right not to act. It is the trial court's understanding of the law regarding election of rights and the findings of fact flowing from the trial court's understanding which is the focus of our review.

We first note that, contrary to the trial court's understanding, the doctrine of election of rights is not available only if the breach is the result of fraud. In fact, prior Wisconsin decisions appear to have employed the doctrine of election of rights, although they have never expressly referred to it as such, in cases where there is a lack of consideration or a lack of mutuality and the party has a choice of either performing or not performing. If a party chooses to continue performance, these cases hold that the party gives up the right to later terminate the contract on grounds of either lack of consideration or lack of mutuality. *See Oconto Brewing Co. v. Cayouette,* 138 Wis. 664, 666,

172

120 N.W. 497, 498 (1909); *First Wis. Nat'l Bank v. Oby,* 52 Wis. 2d 1, 9, 188 N.W.2d 454, 458 (1971). *See also* 5 WILLIAM H.E. JAEGER, WILLISTON ON CONTRACTS § 683, at 270–71 (3rd ed. 1961). The election of rights doctrine, therefore, applies in this case.

█

"Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone." *Bierce, Ltd. v. Hutchins,* 205 U.S. 340, 346 (1907). Moreover, the doctrine of election is not to be confused with the concept of waiver. Waiver is the " 'voluntary and intentional relinquishment of a known right.' " *Schwantes v. Schwantes,* 121 Wis. 2d 607, 627, 360 N.W.2d 69, 78 (Ct. App. 1984) (quoted source omitted). An election, in contrast, is effective even though there is no intent to relinquish the other, inconsistent right. *See Commercial Ins. Co. v. Burnquist,* 105 F. Supp. 920, 938 (N.D. Iowa, 1952); 5 JAEGER, *supra* § 684, at 275.

The doctrine of election has been addressed in Wisconsin cases discussing a party's election of two or more inconsistent remedies. *See Stadler v. Rohm,* 40 Wis. 2d 328, 336, 161 N.W.2d 906, 910 (1968). Although these cases deal with an election of remedies, the principles underlying the doctrine of election are the same, whether it be an election of rights or remedies. *See* 5 JAEGER, *supra* § 679, at 252. In both instances the question is the same: did the party who had a choice of several rights or remedies elect one and thereby destroy all right to the others. *See id.*

In *Stadler,* the buyer of a hotel brought suit against the seller after discovering various defects in the hotel. *See Stadler,* 40 Wis. 2d at 330–31, 161 N.W.2d at 906–07. About five months later, however,

the buyer amended his complaint to ask for rescission of the contract based on several misrepresentations the seller made in the offer to purchase. *See id.* at 331, 161 N.W.2d at 907. The trial court found that the buyer had not waived his right of rescission and rescinded the contract. *See id.* at 332–33, 161 N.W.2d at 908. On appeal, the supreme court reversed, holding that because the buyer originally brought a suit for damages (an action at law), he affirmed the contract and was therefore precluded from bringing an action in equity for rescission. *See id.* at 340–41, 161 N.W.2d at 912.

■

In reversing the trial court, the supreme court rejected the buyer's argument that because all of the facts giving rise to the rescission action were not known at the time he sued for damages, his original suit did not have the effect of affirming the contract. The court noted that although " '[a] party is never bound by the election of a remedy, made in ignorance of substantial facts, which, if known, might proffer an alternative [decision],' " the court must also consider whether " 'such ignorance is the result of a failure to resort to reasonable means of knowledge within his reach.' " *See id.* at 336–37, 161 N.W.2d at 910 (quoted sources omitted; footnotes omitted). The court then concluded that the buyer's ignorance of the material facts was the result of his failure to attempt to confirm the exact amount of misrepresentations until after commencing his suit for damages. *See id.* at 340, 161 N.W.2d at 912. The buyer might not have been aware of the extent of the misrepresentations until after filing the original suit, but as an experienced businessman who already "had much suspicion" concerning the misrepresentations, he "could have acquired more

information" in the reasonable exercise of business prudence. *See id.*

The concept set forth in *Stadler*—that it is inequitable to regard an election of remedies as final unless the party was aware, or should have been aware, of all the material facts—also appears in Williston's discussion on the principle of election of rights or remedies. According to Williston:

> The principle of election [whether it be an election of rights or remedies] is an equitable one and, unless the other party has been deceived or the situation changed, it is inequitable to regard a choice as final unless the party having the right of election was aware, *or should have been aware,* of all material facts making one choice more desirable than the other alternative choice. . . . "Election presupposes knowledge, or at least the omission to fulfill some duty from which knowledge would have followed."

5 JAEGER, *supra* § 685, at 280–81 (emphasis added; footnote omitted). Thus, reading *Stadler* and Williston together, we conclude that under circumstances such as those existing in this case, it would be inequitable to regard an election of rights as final unless the party having the right of election was aware, or should have been aware, of all material facts making one option more desirable than the other. *See Stadler,* 40 Wis. 2d at 336–37, 161 N.W.2d at 910–11; 5 JAEGER, *supra* § 685, at 280–81.

■■■■

Bearing in mind these principles, we now turn to the trial court's findings of fact and law. When reviewing mixed findings of fact and law, we must first separate the factual determinations from the conclusions of law and apply the appropriate standard of

175

review to each. *See Meyer v. Classified Ins. Corp.,* 179 Wis. 2d 386, 396, 507 N.W.2d 149, 153 (Ct. App. 1993). We will not set aside findings of fact by a trial court unless they are clearly erroneous. *See* § 805.17(2), STATS. However, the application of the facts to an objective legal standard, here whether Duve should have been aware of his option to rescind the contract, is a question of law that we review independently of the trial court. *See Meyer,* 179 Wis. 2d at 396, 507 N.W.2d at 153.

As we previously noted, the trial court alternatively found that even if the election of rights doctrine applies, Duve did not make a knowledgeable election to execute the contract. The trial court found that despite Duve's signing of the Notice of Right to Exercise Option of First Refusal, and despite delivery of the notice to the Gaugerts, Duve was not aware of all the material facts making one option more desirable than the other until he sat down with his lawyers three weeks later and found out, presumably for the first time, that the contract was voidable. To reiterate part of the trial court's findings, it stated that "this transaction was not so far along with respect to the bouncing back and forth of these letters concerning Mr. Hansen's offer and Mr. Gaugert's offer and letters to the attorneys that Mr. Duve was not in a position to assess his situation on this particular document . . . . [T]he first time he was in a position to make any meaningful election . . . was when everybody sat down . . . ."

The trial court's factual finding that Duve was unaware of his option to avoid the contract when he sent the notice is not clearly erroneous. However, this only partially answers the question of whether Duve knowingly executed the contract. We say "partially" because the question is not simply whether Duve was

176

subjectively aware of all the material facts at the time of election, but also whether he should have been aware. *See Stadler,* 40 Wis. 2d at 336–37, 161 N.W.2d at 910–11; 5 JAEGER, *supra* § 685, at 280–81.

Although the trial court failed to address this facet of the issue, based upon our review of the historical facts as found by the trial court we conclude that as a matter of law Duve should have been aware of material facts necessary to make a knowing election between executing or rescinding the contract. Duve's ignorance, similar to that of the buyer in *Stadler,* was due to the simple fact that he made no attempt to investigate the facts within his knowledge prior to sending the notice. Duve himself was the source of information which led to the decision to rescind the contract—there was no need for him to search for additional material facts. More to the point, Duve all along had the benefit of legal counsel and, had he conferred with his lawyers about the circumstances surrounding the contract *before* signing and sending the notice, he surely would have discovered that the contract lacked consideration and mutuality. But he presumably did not do this. Instead, it was not until three weeks *after* sending the notice that Duve again conferred with his lawyers, learned that the contract was unenforceable and then attempted to withdraw his earlier notice and rescind the contract.

Under these circumstances, we conclude that Duve's ignorance was the result of his " 'failure to resort to reasonable means of knowledge within his reach.' " *See Stadler,* 40 Wis. 2d at 337, 161 N.W.2d at 910 (quoted source omitted; footnotes omitted). Duve could have easily acquired the necessary facts to inform him of his option to rescind the contract prior to sending the notice; therefore, he made a knowing elec-

tion because he should have been aware of the facts necessary to make one option more desirable than another. *See id.; 5* JAEGER, *supra* § 685, at 280–81. Courts will not come to the relief of one who has chosen to close his or her eyes to what is obviously discoverable, *see Stadler,* 40 Wis. 2d at 337, 161 N.W.2d at 910–11, and Duve is accordingly bound by his original election to send the notice.

Duve's claim that the contract lacks consideration and mutuality is then answered by our foregoing discussion. Having elected to execute the contract, Duve can no longer contend that the contract was void for lack of consideration and mutuality. Duve is bound by his decision to elect one right (to execute the contract) over an alternative (rescission). *See id.* at 335, 161 N.W.2d at 909 (when a party elects to affirm a contract it loses its right to rescind); 5 JAEGER, *supra* § 683, at 270–71. We therefore reject Duve's claim that he did not execute the contract. An executory contract is one in which the parties have bound themselves to future activity that is not yet completed, while an executed contract is one in which all promises have been fulfilled and nothing remains to be done. *See Edwards v. Petrone,* 160 Wis. 2d 255, 258, 465 N.W.2d 847, 848 (Ct. App. 1990). As required by the contract, Duve sent the Gaugerts a notice of right of first refusal setting forth the terms of Hansen's offer. The contract did not require Duve to do more except wait for the Gaugerts' response; therefore, Duve executed the contract. At law, once a contract is executed it is valid even though it originally lacked consideration or mutuality. *See Oconto Brewing,* 138 Wis. at 666, 120 N.W. at 498. Thus, based on the foregoing analysis, we reverse the

trial court's conclusion of law that Duve did not execute the contract.[1]

*By the Court.*—Judgment reversed.

[1] The trial court also awarded Hansen statutory costs and attorney's fees because the Gaugerts failed to pursue any cause of action against Hansen. The Gaugerts appealed this award. However, they subsequently abandoned their appeal on this issue. Accordingly, we will not address this issue and do not disturb the trial court's award of statutory costs and attorney's fees.