**2020 WI App 15**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case Nos.:      2019AP314
2019AP315

Complete Title of Case:

**2019AP314**

**DR. ALFRED M. HABEL,**

    **PLAINTIFF-APPELLANT,**

  **V.**

**ESTATE OF ALFRED JOHN CAPELLI AND JULIE CAPELLI,**

    **DEFENDANTS-RESPONDENTS.**

**2019AP315**

**IN RE THE ESTATE OF ALFRED JOHN CAPELLI:**

**ESTATE OF ALFRED JOHN CAPELLI AND JULIE CAPELLI,**

    **RESPONDENTS,**

  **V.**

**DR. ALFRED M. HABEL,**

    **APPELLANT.**

Opinion Filed:      February 26, 2020

Submitted on Briefs:  October 31, 2019

JUDGES:          Neubauer, C.J., Gundrum and Davis, JJ.
    Concurred:
    Dissented:

Appellant
ATTORNEYS:          On behalf of the plaintiff-appellant the cause was submitted on the briefs of *Kent A. Tess-Mattner* and *Amy Hetzner* of *Schmidt, Rupke, Tess-Mattner & Fox, S.C.*, Brookfield.

Respondent
ATTORNEYS:          On behalf of the defendants-respondents, the cause was submitted on the brief of *J. Michael McTernan* of *Alia, DuMez & McTernan, S.C.*, Kenosha.

COURT OF APPEALS
DECISION
DATED AND FILED

February 26, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| Appeal Nos. | 2019AP314 | Cir. Ct. Nos. 2018CV406 |
| | 2019AP315 | 2018CV533 |
| | | 2018PR35 |

STATE OF WISCONSIN

IN COURT OF APPEALS

---

NO. 2019AP314

DR. ALFRED M. HABEL,

    PLAINTIFF-APPELLANT,

  V.

ESTATE OF ALFRED JOHN CAPELLI AND JULIE CAPELLI,

    DEFENDANTS-RESPONDENTS.

---

NO. 2019AP315

IN RE THE ESTATE OF ALFRED JOHN CAPELLI:

ESTATE OF ALFRED JOHN CAPELLI AND JULIE CAPELLI,

    RESPONDENTS,

  V.

**DR. ALFRED M. HABEL,**

   **APPELLANT.**

_____

APPEALS from a judgment and an order of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1     NEUBAUER, C.J.  Dr. Alfred M. Habel appeals from a judgment and an order in favor of the Estate of Dr. Alfred John Capelli and his widow, Julie Capelli (collectively "the Estate").[1]  The dispute is whether an alleged contract between Capelli and Habel, under which Habel could sell Capelli's sports memorabilia collection for a commission after Capelli's death, is enforceable.  We conclude that because Habel can choose whether or not to perform under the contract, his promise is illusory and lacks consideration, thereby rendering the contract unenforceable.  We affirm.

## FACTUAL BACKGROUND

¶2     Habel operated a sports memorabilia business, and his friend, Capelli, was a good customer, purchasing many items and also taking additional items with a promise to pay Habel in the future.[2]  When Habel eventually sought payment for the additional items, Capelli said that he did not want his family to know how much

_____

[1]  For ease of reference, we will use Capelli when referring to Dr. Capelli, and we will use Julie Capelli when referring to her.

[2]  The factual background is taken from the summary judgment submissions, although none of these facts are material for our resolution.

money he had been spending on his collection. Capelli proposed that, in exchange for Habel's forbearance on the debt, Habel could sell, upon Capelli's death, the collection and take a 10% commission.

¶3    Without legal counsel, Capelli drafted an agreement. It stated in pertinent part as follows:[3]

> This Agreement is entered into on this 8 day of 2001, by and between alfred john capelli, an individual, and alfred habel, an individual.
>
> In consideration of the mutual promises set forth hereunder, the sufficiency of which is hereby acknowledged, alfred john capelli and alfred habel agree to the following:
>
> Alfred John Capelli and Alfred Habel agree to the following: In the event of Alfred John Capelli, I request that Alfred Habel become trustee of my sportcard and memorabilia collection known as Docsdunks and will him to dispose of said collection for the benefit of my remaining family. In exchange I assign 10 percent commission of net sales to the Habel family and 5 percent of net sales to the Crisis Pregnancy Center in exchange for said services. The remainder of net sales will go to my family for future investment. This I would consider a matter of trust, support, and friendship for such activity. I also enable payment of all debt and expenses, past and future, related to such activity, at the discretion of Alfred Habel. This agreement may be terminated as follows: when the duties described above have been completed, or in the event he shall not accept, or delegate to another party, with the permission of Jack Waters, my trustee. Kenosha.

The ostensible signatures of Capelli and Habel appear at the bottom of the document.

---

[3] The agreement contains a number of typographical and other errors. Because the issues involve a close examination of the agreement, we quote from the agreement verbatim.

¶4      The agreement is shown to have been executed on February 8, 2001. More than 16 years later, on December 31, 2017, Capelli died intestate.  Habel subsequently presented the agreement to Julie Capelli.  She had not discussed such a sale with her husband, had not seen the 2001 agreement previously, and denied permission to Habel to sell the collection.

¶5      Habel took legal action based on his claim that the agreement was a binding contract, seeking specific performance or money damages.  Habel filed claims in the probate court in which Julie Capelli was handling administration of the Estate, and he filed two civil actions against the Estate.  The second civil action added Julie Capelli and a fictitious trust as defendants.  The court consolidated the two civil actions.

¶6      After discovery, the Estate moved for summary judgment in all three proceedings, contending that the contract is indefinite, illusory, and amounts to an unenforceable testamentary disposition as it was not properly witnessed. The circuit court essentially agreed with all of the Estate's arguments and granted judgment in its favor.  Habel appealed from both the probate and civil actions, and we have consolidated those appeals.[4]

---

[4]  In the civil action, Habel appealed from the judgment in favor of the Estate, and, in the probate action, Habel appealed from the order in favor of the Estate.

4

**DISCUSSION**

*Standard of Review*

¶7     We independently review a grant of summary judgment, using the same methodology as the circuit court. *See Secura Ins. v. Super Prods. LLC*, 2019 WI App 47, ¶11, 388 Wis. 2d 445, 933 N.W.2d 161.  Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2017-18).[5]

¶8     This case also requires us to interpret a contract.  When the pertinent language of the contract is unambiguous, it presents a question of law, which we review de novo. *See Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476.  We also examine the parol evidence rule, which only applies when a contract is ambiguous.  *Id.*, ¶33.  Whether a contract is ambiguous is an issue of law for our independent review. *See Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶8, 266 Wis. 2d 124, 667 N.W.2d 751.

*The Agreement is Unenforceable Because Habel Gave No Consideration, as His Promise to Sell was Illusory*

¶9     The Estate argues that the agreement is unenforceable because there was no consideration from Habel, specifically, that his ostensible promise to sell the

---

[5] All references to the Wisconsin Statutes are to the 2017-18 version.

5

collection was illusory. It was a sale he could choose to make, or not make. We agree.[6]

¶10     The nature and effect of an illusory promise were aptly explained by the court in *Devine v. Notter*, 2008 WI App 87, ¶4, 312 Wis. 2d 521, 753 N.W.2d 557 (citations omitted):

> An illusory promise is a promise in form only: one that its maker can keep without subjecting him- or herself to any detriment or restriction. An archetypal example of an illusory promise is the statement that "I promise to do as you ask if I please to do so when the time arrives." A promisor can keep that promise by either doing as the promisee asks or not, and so the promisor maintains total freedom to do as he or she wants. Since the maker of an illusory promise assumes no detriment or obligation, an illusory promise is not regarded as consideration. If a party to a purported contract has, in fact, made only illusory promises and therefore not constrained him- or herself in any way, he or she has given no consideration and therefore no contract exists.

¶11     As quoted by our supreme court, a treatise on contract law offered this view of illusory promises:

> Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration.... In such cases, where the promisor may perform or not, solely on the condition of his whim, his promise will not serve as consideration.

---

[6] While we note that an illusory contract is not technically a contract, for ease of reference we call the document by its name—agreement—instead of repeatedly calling it a purported or alleged agreement. *See Metropolitan Ventures, LLC v. GEA Assoc.*, 2006 WI 71, ¶56 n.6, 291 Wis. 2d 393, 717 N.W.2d 58 (Abrahamson, J. concurring) (alteration in original), opinion clarified on denial of reconsideration, 2007 WI 23, 299 Wis. 2d 174, 727 N.W.2d 502 ("Illusory contracts are not contracts because the illusory language 'makes performance optional with the promisor no matter what may happen, or no matter what course of conduct in other respects the promisor may pursue[;] it does not justify the promisee in understanding that a commitment has been made.'" quoting 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 1:2 (4th ed. 1990))).

*DeBruin v. St. Patrick Congregation*, 2012 WI 94, ¶45, 343 Wis. 2d 83, 816 N.W.2d 878 (Crooks, J., concurring) (quoting 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:7 (4th ed. 2008)).  Consideration is a required element of any valid contract—there must be a "bargained for" obligation to perform a certain action. *See* RESTATEMENT (SECOND) OF CONTRACTS, §§ 71-72 (AM. LAW INST. 1981).

¶12    In the agreement, Habel does not promise to do anything, or commit to put himself at any disadvantage or face any detriment.  Although the second paragraph declares, "In consideration of the mutual promises set forth hereunder, … [the parties] agree to the following," no promises by Habel are set forth.  The agreement expresses Capelli's wishes for the disposition of his sports memorabilia: Capelli "request[s]" that Habel become trustee of the collection and "will[s] him to dispose" of it.  However, the agreement states that it can be terminated "in the event [Habel] shall not accept" to perform the sale.  That sentence makes clear that Habel has not yet agreed to do anything and explicitly gives him unfettered discretion not to perform the sale.  *See* 1 WILLISTON ON CONTRACTS §§ 4:27, 4:28 (an unlimited choice to cancel as to future performance "destroys the promise" and renders the contract illusory; "a wholly unlimited option to the promisee may not be permitted").  Because Habel maintained "total freedom to do as he" wanted and assumed no obligation, he gave no consideration, rendering the contract unenforceable. *Devine*, 312 Wis. 2d 521, ¶4.

*Habel's Parol Evidence Is Inadmissible*

¶13    Habel points to his affidavit in which he contends he provided consideration by allowing Capelli to take many items without immediate payment and that the sales commission would go toward satisfying the pre-existing debt owed to him.  He points out that forbearance on an antecedent debt can serve as sufficient consideration.  *See **Hammel v. Ziegler Fin. Corp.***, 113 Wis. 2d 73, 80-82, 334 N.W.2d 913 (Ct. App. 1983).

¶14    We cannot consider evidence of Habel's alleged forbearance on Capelli's antecedent debt because those circumstances are not laid out in the agreement and are therefore evidence extrinsic to a complete and final agreement, i.e., those circumstances are barred from our review by the parol evidence rule.  This rule is not a rule of evidence but one of substantive contract law.  ***Town Bank***, 330 Wis. 2d 340, ¶36.  The rule provides as follows:

> When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake.

*Id.* (citation omitted).  The rule aims to achieve the goal of construing a contract:  to determine the intent of the parties, and "the best indication of the parties' intent is the language of the contract itself."  *Id.*, ¶33.  Thus, if the contract, or certain provisions of it, are unambiguous, our determination of "the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence."  *Id.* (citation omitted); *see **S & H Inc. v. Sladky***, 32 Wis. 2d 686, 693-94, 146 N.W.2d 488 (1966) (where individual provision is clear and unambiguous, parol evidence cannot be used to add terms or remake the contract).

8

¶15     Despite its poor draftsmanship, the agreement is clear in one respect: it unambiguously provides that any mutual promises that provide "consideration" are set forth therein. None binding Habel are provided. There is no mention of Habel's alleged forbearance on Capelli's antecedent debt, much less an exchange of that forbearance for the sales commission. The document does not refer or allude to any other documents, agreements, or other such circumstances that should be included as part of the agreement. As such, Habel's parol evidence cannot be used to vary or add terms, such as consideration—some detriment or obligation by Habel—when the document makes clear that all mutual promises are set forth therein. *See Town Bank*, 330 Wis. 2d 340, ¶39 (parol evidence may not be used to vary the terms of an unambiguous written contract); *Conrad Milwaukee Corp. v. Wasilewski*, 30 Wis. 2d 481, 487-88, 141 N.W.2d 240 (1966) (if the contract language is unambiguous, any evidence that would change the terms of the contract violates the parol evidence rule; to be admissible, the evidence "must clarify an existing ambiguity and cannot establish an understanding in variance with the terms of the written document").

*Habel's Demand to Perform, i.e., His "Acceptance," Does Not Bind the Estate*

¶16     Habel argues that his demand to perform, i.e., his "acceptance," is binding on the Estate. This ignores the undeniable conclusion that "acceptance," including that in the form of a lawsuit seeking to compel specific performance, does not make an illusory contract enforceable. *See Nodolf v. Nelson*, 103 Wis. 2d 656, 658-60, 309 N.W.2d 397 (Ct. App. 1981) (demand for specific performance denied where promise to purchase was illusory).

9

¶17     Thus, it is not surprising that none of the cases Habel cites, setting forth various contractual approaches, support his argument that his demand to perform binds the Estate to an illusory contract.

¶18     For example, suggesting the agreement is an "executory contract," Habel argues that, by choosing to perform the sale, he has made the agreement binding under the "election of rights" principle, relying on ***Gaugert v. Duve***, 217 Wis. 2d 164, 166-67, 579 N.W.2d 746 (Ct. App. 1998). ***Gaugert*** involved an agreed-upon right of first refusal to purchase farmland, for which there was no consideration. ***Id.*** at 177-78. The court held that the seller, by sending a notice of the right of first refusal, performed all that was required of him under the contract, and he therefore executed it, binding him to its terms. ***Id.*** at 178. The case before us involves a critically different fact, namely, that neither party has performed.

¶19     Habel also points to cases addressing "conditional" contracts, citing to ***Kocinski v. Home Ins. Co.***, 147 Wis. 2d 728, 739-40, 433 N.W.2d 654 (Ct. App. 1988), *aff'd as modified*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990). He argues that a contract with a condition, such as the sale, can be binding. However, in ***Kocinski***, the supreme court held that Kocinski could revoke the conditional offer prior to

10

performance of the condition. *See* **Kocinski**, 154 Wis. 2d at 71. Here, there was no contract to begin with, and in any event, Habel did not perform the condition.[7]

¶20    Habel identifies cases addressing "unilateral" contracts, arguing that "once Dr. Habel sells the sports memorabilia collection," the Estate would be bound. Again, as Habel acknowledges, in each case, the offeree's performance rendered the agreement binding. Thus, in **Arnold Joerns Co. v. Roberts**, 16 Wis. 2d 333, 335-36, 114 N.W.2d 416 (1962), where the seller promised to pay a commission if the broker produced prospective customers, a unilateral contract arose binding the seller to pay the commission after the broker produced customers who contracted with the seller. *See also* **First Wis. Nat'l Bank of Milwaukee v. Oby**, 52 Wis. 2d 1, 9, 188 N.W.2d 454 (1971) (although the agreement lacked mutuality of obligations, once the parties performed, they were bound); **Lazarus v. American Motors Corp.**, 21 Wis. 2d 76, 83, 123 N.W.2d 548 (1963) (a unilateral contract is not enforceable unless the offeree has substantially performed or has otherwise made a change of

---

[7] Although the supreme court decided the case with a different approach, the court of appeals in **Kocinski v. Home Insurance Co.**, which Habel cites, makes clear that whether posited as a condition to a contract's making, or as a condition under the contract itself, neither is enforceable "if satisfaction of the condition turns 'upon the whim or caprice of the party to be satisfied.'" **Kocinski v. Home Ins. Co.**, 147 Wis. 2d 728, 739, 433 N.W.2d 654 (Ct. App. 1988) (citation omitted), *aff'd as modified*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990). As the court explained:

> Thus, although the example, "I will buy the Andy Warhol painting if I like it," can be construed as either a condition under a contract or, in Holmes' phrase, as a condition "to the contract's coming into being," the undertaking, no matter how construed, is illusory because, as Holmes put it, it makes "the promisor his own final judge."

**Kociniski**, 147 Wis. 2d at 739 (citing OLIVER WENDALL HOLMES, JR., THE COMMON LAW, 315-16 (1881)). Habel has not denied that he could choose to sell, or not sell, on his whim.

position); ***Estate of Lube v. Gosse***, 225 Wis. 365, 371-72, 274 N.W. 276 (1937) (unilateral promise was fully and completely accepted by performance).

¶21 As explained in these cases, by definition, a unilateral contact consists of a promise in exchange for performance. Thus, the contract is not formed until performance. *See **Paulson v. Olson Implement Co**.*, 107 Wis. 2d 510, 517 n.6, 319 N.W.2d 855 (1982) ("[A unilateral contract] is typified by the law school hypothetical situation where A says to B, 'If you walk across Brooklyn Bridge, I promise to pay you ten dollars.' A has made a unilateral contract which arises when—and if—B performs the act." (quoting JOHN D. CALAMARI AND JOSEPH M. PERILLO, THE LAW OF CONTRACTS, 17-18 (2d ed. 1977)).[8] Up until the point of any such performance, A is free to rescind. That is essentially what happened here. Julie Capelli declined to allow Habel to sell her deceased husband's memorabilia.

¶22 In an attempt to overcome the absence of performance, Habel cites ***Merrick v. Northwestern Nat'l Life Ins. Co.***, 124 Wis. 221, 102 N.W. 593 (1905), arguing that the Estate cannot prevent performance of this "executory" contract. *Merrick* is equally unavailing. In that case, a life insurance company wrongfully declared a life insurance policy forfeited and refused to accept premiums. *Id.* at

---

[8] We refer to executory and unilateral contracts because these concepts are discussed in the cases cited by Habel, but we note that some of the uses of these labels in older cases, rather than simply the concepts of offer, acceptance, consideration, etc., have been questioned. *See **Paulson v. Olson Implement Co.***, 107 Wis. 2d 510, 517 n.6, 319 N.W.2d 855 (1982); *see* 1 WILLISTON ON CONTRACTS, § 1:17 (noting that the RESTATEMENT (SECOND) ON CONTRACTS § 1 (1981) eschews using the terms "unilateral" and "bilateral," suggesting the distinction is "conducive to confusion, and that use of the terms is to be avoided").

226. In other words, the life insurance company breached a contract by refusing to perform.[9] *Id.* Here, there is no contract for the Estate to breach.

¶23 In short, neither *Merrick* nor any of the other cases Habel cites provide support for Habel's suggestion that the Estate was bound to the illusory agreement prior to performance. *See **Schlosser v Allis-Chalmers Corp**,* 86 Wis. 2d 226, 237, 271 N.W.2d 879 (1978) (creation of a binding unilateral contract requires that the offeree perform); RESTATEMENT (SECOND) OF CONTRACTS § 42 cmt. a (1981) ("[M]ost offers are revocable;" "the ordinary offer is revocable even though it expressly states the contrary, because of the doctrine that an informal agreement is binding as a bargain only if supported by consideration.").

---

[9] ***Merrick v. Northwestern Nat'l Life Ins. Co.***, 124 Wis. 221, 102 N.W. 593 (1905), is a good example of the unhelpful use of the label "executory" when it comes to a contract with mutual promises for future performance. WILLISTON ON CONTRACTS comments as follows:

> [B]ecause the term contract is defined in terms of promise, requiring that something be done in the future, there can be no such thing as an executed contract. By the same token, the phrase executory contract is misleading; all contracts, by definition, are executory. When they cease to be so, they cease to be contracts at all. Nevertheless, the courts continue to speak of executory and executed contracts, the former term meaning a contract, the obligation of which relates to the future, or a contract under which the parties have bound themselves to future activity that is not yet completed or performed.

1 WILLISTON ON CONTRACTS, § 1:19 (footnotes omitted).

13

¶24     In sum, Habel provides no authority to explain how Capelli could bind the Estate to an illusory agreement, by requiring the Estate to turn over the memorabilia for sale by Habel.  The Estate is not bound to perform under this illusory agreement.[10]

*By the Court*.—Judgment and order affirmed.

---

[10] The Estate advanced other arguments in support of its motion, including that the agreement was indefinite and was an invalid testamentary disposition due to the inadequacy of witnesses.  Habel contends that the document is not a testamentary disposition and therefore not subject to any witness requirement.  Given the parties' respective positions, we need not reach this issue.  In light of our decision that Habel failed to provide consideration is dispositive, we need not address the Estate's indefiniteness arguments.  *See **Lake Delavan Prop. Co. v. City of Delavan***, 2014 WI App 35, ¶14, 353 Wis. 2d 173, 844 N.W.2d 632 (we need not address other arguments when one is dispositive).