# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 7, 2024

**Samuel A. Christensen**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP832**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023SC902

**IN COURT OF APPEALS**
**DISTRICT II**

---

MICHAEL FREDERICK PITSCH,

    PLAINTIFF-APPELLANT,

  V.

CHARTER COMMUNICATIONS INC.,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Manitowoc County: ROBERT P. DEWANE, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] Michael Frederick Pitsch, proceeding pro se, appeals from an order dismissing his small claims action against Charter

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Communications, Inc. (Charter) without prejudice. Pitsch argues that the circuit court erred in construing his claim against Charter to be for breach of contract and in dismissing the claim because Pitsch did not submit evidence of the terms and conditions that governed Charter's provision of internet services to him. Based upon this court's review of the parties' arguments and the record, and for the reasons explained below, this court affirms the order dismissing Pitsch's action.

## BACKGROUND

¶2      Pitsch commenced this action against Charter in August 2023, alleging that the internet service Charter provided him beginning in September 2018 was not as fast as Charter advertised nor at the speed for which he subscribed. His complaint asserted that he had received internet service at fifty percent of Charter's advertised speeds—"200Mbps actual on 400 adve[r]tised plan [and] 500Mbps actual on 1000 advertised plan."[2] Pitsch attached various documents to his pleading, including a list of his claimed damages, which consisted of monthly service fees he contended were excessive given the speeds he received and the cost of equipment he purchased to test and improve the speed of his internet connection. Charter filed an answer contesting Pitsch's allegations and asserting that testing it conducted at Pitsch's home confirmed that it was "providing service speeds for which [Pitsch was] subscribed."

¶3      After discovery and pretrial motion practice, a court commissioner held a hearing on Pitsch's claim, at which the parties presented testimony and other evidence in support of their positions. The commissioner later issued a

---

[2] "Mbps," or megabits per second, is a measurement of the speed of an internet connection.

written decision in which he determined that Pitsch had not carried his burden of proof and denied his claim for damages. Pitsch timely requested a trial to the circuit court and added an award of punitive damages to his requested relief.

¶4 The circuit court held a trial on March 28, 2024. At the start of the proceeding, the court sought to clarify the nature of Pitsch's claim against Charter:

> THE COURT: … your claim as I understand it, is that you are not receiving internet speeds that you contracted for; correct?
>
> MR. PITSCH: Myself, other Charter—and other Charter customers.
>
> THE COURT: Well, other Charter customers aren't plaintiffs right now; you are. So your claim is that you have not been getting the internet speeds you contracted for; correct?
>
> MR. PITSCH: And I will show the Court that I'm not alone in that, yes.
>
> THE COURT: Mr. Pitsch, you need to answer questions "yes" or "no." Is that—is that your claim?
>
> MR. PITSCH: Yes, Your Honor.

The court then noted that Pitsch had not filed the "terms and conditions of service," which it described as "the actual agreement between—it's the binding agreement between you and Charter in terms of what they're selling to you, what they're providing to you, and what you're agreeing to pay for."

¶5 Pitsch told the circuit court that he had a copy of the terms and conditions and had read them but did not understand their relevance to his case. He denied that he had signed the terms and conditions and asserted that they were not "the root of [his] case." Instead, he asserted that "[t]he root of [his] case is what is being advertised and what is being billed, and more importantly, what is

being billed to [him]." The court then retrieved a March 2021 Charter invoice to Pitsch that was attached to Charter's answer and directed Pitsch's attention to the following text on the invoice:

> **Spectrum Terms and Conditions of Service**—In accordance with the Spectrum Terms and Conditions of Service, Spectrum services are billed on a monthly basis….

The court stated that Pitsch needed to present evidence of "the terms and conditions of service because that's the agreement between you and [Charter] that you're claiming they're violating." Pitsch replied that the invoices themselves should be sufficient because they indicated the speed of service that Charter was advertising and billing him for. The court disagreed, stating, "Advertisements are not contracts. Bills are not contracts." Because Pitsch had not submitted the terms and conditions referenced on the invoices, the court dismissed his claim without prejudice and told him he was "free to refile." Pitsch reiterated that he was not "claiming a contract violation" but rather "fraudulent advertising and fraudulent billing for services," but the court declined to change its ruling, stating, "There has to be an agreement to provide services…. You need to have the terms and conditions of service for me to understand what the basis of your claim is."

## DISCUSSION

¶6    Before turning to Pitsch's arguments, this court must address several deficiencies in his appellate briefs. Though Wisconsin courts may liberally construe filings by pro se litigants, *see West v. Macht*, 2000 WI App 134, ¶15 n.6, 237 Wis. 2d 265, 614 N.W.2d 34, pro se litigants "are bound by the same rules that apply to attorneys on appeal," *Waushara County v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992). Pitsch's briefs violate several rules of appellate

procedure that make his arguments more difficult for this court to understand and address.

¶7 First, Pitsch neglected to file the required short appendix with his principal brief containing, among other things, "the findings or opinion of the circuit court [and] limited portions of the record essential to an understanding of the issues raised." *See* WIS. STAT. RULE 809.19(2)(a). The appendix is important because it assists this court in understanding the legal issues the appellant wishes to raise, the portions of the record that are important to those issues, and any findings or decisions made by the circuit court on those issues.

¶8 In addition, Pitsch's principal and reply briefs lack citations to the record to support the facts and documents he reproduces or discusses. *See* WIS. STAT. RULE 809.19(1)(d) (requiring an appellant's brief to contain "a statement of facts relevant to the issues presented for review, with appropriate references to the record"). Such references are important because this court is bound by the record as it comes to us from the circuit court and cannot consider documents or other items that are not included in the record. *See South Carolina Equip., Inc. v. Sheedy*, 120 Wis. 2d 119, 125-26, 353 N.W.2d 63 (1984) ("An appellate court can only review matters of record in the [circuit] court and cannot consider new matter attached to an appellate brief outside that record."). Absent references to the record, it is difficult for this court to determine whether the documents and facts Pitsch discusses in his brief are part of the record on appeal, and if so, where in the record they are located. Providing these references is a party's responsibility; this court is not required to search the record for support for legal arguments that are not accompanied by adequate citations to the record. *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

¶9 Finally, Pitsch does not cite any case law, statutes, or other legal authorities as support for many of his arguments. Again, it was his responsibility to do so, not this court's. *See* WIS. STAT. RULE 809.19(1)(e) (requiring appellant's brief to contain legal arguments with citations to supporting statutes and other legal authorities). This court "need not consider arguments that are undeveloped and unsupported by citations to legal authority." ***Wal-Mart Real Est. Bus. Tr. v. City of Merrill***, 2023 WI App 14, ¶32, 406 Wis. 2d 663, 987 N.W.2d 764. Notwithstanding these deficiencies, this court will endeavor to address Pitsch's substantive arguments as best it can discern them.

¶10 Pitsch's primary arguments appear to be that the circuit court erred in construing his claim against Charter to be for breach of contract and in dismissing this claim because he failed to submit the terms and conditions referenced on his monthly bills. He states in his principal brief that "[t]his case is actually about **inappropriate and excessive billing**, with a side relationship to fraudulent advertising period." Pitsch contends that the dismissal prevented him from having "his day in court" and asks this court to reverse the circuit court's decision and remand this case for a jury trial.

¶11 Wisconsin courts construe complaints "to do substantial justice" between the parties. WIS. STAT. § 802.02(6); *see also* WIS. STAT. § 799.04(1) ("[T]he general rules of practice and procedure in [WIS. STAT.] chs. … 801 to 847 shall apply to [small claims] actions and proceedings under this chapter."). In construing a complaint, Wisconsin courts focus on the facts alleged to determine what type of legal claim is being made. ***Townsend v. ChartSwap, LLC***, 2021 WI 86, ¶4 n.5, 399 Wis. 2d 599, 967 N.W.2d 21; ***Amek bin-Rilla v. Israel***, 113 Wis. 2d 514, 521, 335 N.W.2d 384 (1983). Here, Pitsch's complaint alleges that at certain points since he began receiving internet service from Charter in

September 2018, the speed of his internet service has been slower than the speed advertised for the service plan to which he was subscribed. Because he allegedly received service at only half of the promised speed, he sought to recover half of the amount he paid each month for internet service as well as certain costs he allegedly incurred to test or improve the speed of his internet connection.

¶12 The circuit court did not err in construing these allegations as stating a claim for breach of contract. Pitsch argues repeatedly that he had no contractual relationship with Charter, but contrary to his belief, the relationship between a service provider and a customer is contractual in nature. The service provider provides a service to the customer in exchange for something of value, usually money paid on a monthly or other periodic basis. This bargained-for exchange, which the law calls "consideration," is the core of a contractual relationship. *See Habel v. Estate of Capelli*, 2020 WI App 15, ¶11, 391 Wis. 2d 399, 941 N.W.2d 858 ("Consideration is a required element of any valid contract—there must be a 'bargained for' obligation to perform a certain action."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 17(1) (AM. L. INST. 1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.").

¶13 Wisconsin law treats the specific relationship at issue here—that between an internet service provider and a customer—as one grounded in contract. The Wisconsin Department of Agriculture, Trade, and Consumer Protection has promulgated regulations that govern the provision of "[e]lectronic communications service[s]," including "internet access service." *See* WIS. ADMIN. CODE § ATCP 123.01(5) (May 2015). Those regulations identify the relationship between an internet service provider and a consumer as a "subscription," a term which the regulations define to mean "a *contract* between a provider and a

7

consumer for an electronic communications service that is provided or billed to the consumer on a continuing or periodic basis." Sec. ATCP 123.01(12) (emphasis added).

¶14    The gravamen of Pitsch's complaint is that he paid Charter for internet service at certain speeds that Charter failed to provide. He concedes as much in his principal brief, describing his appeal as "aris[ing] from a dispute between … Pitsch and … Charter … concerning [its] alleged failure to provide the level of services billed for." This describes a breach of contract—a failure to perform an obligation or fulfill a promise. *See **Ristow v. Threadneedle Ins. Co.**,* 220 Wis. 2d 644, 653, 583 N.W.2d 452 (Ct. App. 1998). Thus, in order to prove his claim, Pitsch had the burden to establish three things: (1) the existence of a contract between him and Charter; (2) Charter's breach of the contract; and (3) damages resulting from the breach. *See **Pagoudis v. Keidl**,* 2023 WI 27, ¶12, 406 Wis. 2d 542, 988 N.W.2d 606.

¶15    In order to prove that Charter was liable to Pitsch, he had to submit evidence that established the terms of the contract—his subscription to Charter's internet service. Pitsch argues that the monthly invoices he received from Charter constitute his "agreement" with Charter. This court disagrees for two reasons. First, the monthly invoices in the record cannot, by themselves, constitute the entire contract between Pitsch and Charter because the invoices are missing at least one material term—the speed of service to which Pitsch was subscribed. Under Wisconsin law, a provider of internet access must "disclose the material terms of the subscription in context with each other" and in writing or, in limited circumstances, orally or electronically. WIS. ADMIN. CODE § ATCP 123.02(2). Furthermore, the invoices in the record—including the March 2021 invoice to which the circuit court directed the parties' attention at the trial—contain language

indicating that Pitsch's subscription was subject to a set of terms and conditions. This indicates that those terms and conditions formed part of the contract between Pitsch and Charter for at least a portion of the time period in question.[3] But Pitsch did not submit any proof of those terms and conditions. By failing to do so, he did not meet his burden of proof to establish the terms of his agreement with Charter.[4]

¶16 This failure of proof meant that the circuit court could not determine the rights and obligations of the parties under their contract or whether Charter had breached the contract by failing to fulfill one or more of its obligations. For this reason, the court did not err in dismissing Pitsch's claim without prejudice, which allows him to refile his case and submit evidence establishing the terms of his contractual relationship with Charter.[5]

---

[3] Pitsch argues in his principal brief that he did not sign or otherwise agree to Charter's terms and conditions when he entered into a subscription for service at 1000 Mpbs in March 2023. He also reproduces in his brief what purports to be an email he received in March 2023, which he contends shows that subscribers need not agree to Charter's terms and conditions in order to obtain internet service from Charter. These contentions do not save his claim. For one thing, they shed no light on the terms of the parties' relationship from September 2018 to March 2023. Additionally, even if the terms and conditions were not part of Pitsch's subscription starting in March 2023, Pitsch still failed to submit evidence to establish the terms of his subscription from that point in time.

[4] Pitsch faults the circuit court for not asking Charter to provide a copy of the terms and conditions at the trial. But as the court correctly noted, Charter had no obligation to do so. Pitsch commenced this lawsuit against Charter, and thus, it was *his* burden to present evidence to the court to prove his claim.

[5] Pitsch raises additional arguments in his brief concerning purported errors made by the court commissioner and the circuit court. For example, he contends the court "ambushed" him by questioning him about Charter's terms and conditions at trial, "yell[ed] … personal attacks" at him, and displayed bias at a pretrial status hearing. Pitsch also alludes to decisions made by the court denying his motions to compel and suggests the court's rulings were erroneous. These arguments are not accompanied by any citations to the record or supporting legal authority. As such, and because the court's dismissal of Pitsch's claim without prejudice allows him to refile his claim, this court declines to address those arguments.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.