COURT OF APPEALS
DECISION
DATED AND FILED

August 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP764**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV602

IN COURT OF APPEALS
DISTRICT II

MICHAEL FREUDE,

PLAINTIFF-APPELLANT,

V.

JEFFREY M. BERZOWSKI AND DI RENZO & BOMIER, LLC,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Winnebago County: DOUGLAS R. EDELSTEIN, Judge. *Affirmed*.

Before Neubauer, Grogan and Lazar, JJ.

¶1 NEUBAUER, J. In this legal malpractice action, Michael Freude appeals from an order granting Di Renzo & Bomier, LLC and one of its members, Jeffrey M. Berzowski (collectively Di Renzo), summary judgment. Di Renzo and Freude entered into a retention agreement whereby Di Renzo limited the scope of

its representation relating to Freude's injuries from a slip and fall to his worker's compensation claim. The retainer agreement also specified that the law firm was *not* employed to bring claims against third parties and that its representation as to nonworker's compensation claims would need to be memorialized in a separate agreement. Freude does not develop an argument that he did not give informed consent to the limited-scope retention agreement. Nor does he challenge the validity of the retention agreement or contend that it is unreasonable, unconscionable, or the product of undue influence or duress. Rather, he *agrees* that the only issue on appeal is whether the limited scope agreement gave rise to a duty to advise him about possible tort claims against third parties and the applicable statutes of limitations. Di Renzo contends that the circuit court correctly granted summary judgment because there was no attorney-client relationship relating to third-party claims out of which such a duty might arise. We agree that pursuant to the terms of the limited scope retention agreement, whereby the parties specifically and contractually disclaimed an attorney-client relationship as to third-party claims, and because Freude has placed no material facts in dispute, his legal malpractice claim is precluded as a matter of law. We decline to override that contractual agreement on public policy grounds. We thus affirm the grant of summary judgment to Di Renzo.

## BACKGROUND

### I.     The Retention Agreement

¶2     On April 2, 2015, Freude was employed as a security guard by Allied Barton Security. He alleges that, while working at a Nestle USA, Inc. facility, he slipped and fell on water in a restroom. A cleaning service maintained the restroom.

¶3    On December 30, 2016, Freude signed a two-page retention agreement with Di Renzo entitled Worker's Compensation Representation Agreement (Retention Agreement).  The agreement provided that Freude engaged the firm "to represent me and to perform all services which they deem necessary to such representation with respect to my worker's compensation claim."[1]

¶4    In addition to specifying the particular claim for which Di Renzo agreed to represent Freude, the Retention Agreement also expressly described what it did not cover:

> I understand that the firm is being employed solely to prosecute a worker's compensation claim on my behalf and that the firm has not been employed to bring actions against third parties as a result of my injury, the date of which is set forth above, nor is the firm being employed to prosecute any employment related claims arising under state or federal law.  I acknowledge and understand that if the firm was to be employed to provide representation as to non-worker's compensation claims that a separate fee arrangement shall need [to] be agreed upon to compensate the firm for prosecution of such other claims.

Freude confirmed that he was "given an opportunity to read through [the Retention Agreement] before [he] signed it."

---

[1] The Retention Agreement repeatedly refers to "my worker's compensation claim," including in language specifying the scope of the representation, a provision obligating Freude to pay "expenses and charges" related to the claim, and language identifying circumstances in which Di Renzo's representation of Freude might end.  In addition, the agreement uses the phrase "the worker's compensation claim" in a paragraph describing the compensation to which Di Renzo would be entitled if Freude received an award of worker's compensation benefits.

¶5   In October 2017, Freude and Di Renzo entered into a separate fee agreement related to Di Renzo's representation of Freude with respect to a social security disability benefit claim.

¶6   After Di Renzo withdrew from representation in December 2017, Freude retained another attorney who settled the worker's compensation claim.

## II.   Circuit Court Proceedings

¶7   In September 2020, Freude filed this legal malpractice action alleging that Di Renzo "learned that third-party claims could be made" against Nestle and the cleaning company "[d]uring [its] investigation of the workers compensation and social security disability claims" but negligently failed to advise him that he might be able to assert those claims and the statute of limitations for such claims.   Di Renzo moved for summary judgment arguing, among other things, that the Retention Agreement's limited scope meant that Di Renzo did not have a duty to investigate or advise Freude about third-party claims.   The circuit court agreed, finding no dispute of material fact as to what the Retention Agreement covered and what it carved out and dismissed Freude's legal malpractice lawsuit.

## DISCUSSION

## I.   Applicable Law and Standard of Review

¶8   "We independently review a grant of summary judgment, using the same methodology as the circuit court." *Habel v. Estate of Capelli*, 2020 WI App 15, ¶7, 391 Wis. 2d 399, 941 N.W.2d 858.   Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2021-22).[2]

¶9      The parties agree that Freude must establish the existence of an attorney-client relationship to pursue a legal malpractice action. *See Skindzelewski v. Smith*, 2020 WI 57, ¶9, 392 Wis. 2d 117, 944 N.W.2d 575; *Lewandowski v. Continental Cas. Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979) (recognizing that a plaintiff in a legal malpractice action has the burden to establish the existence of attorney-client relationship). The parties' arguments on appeal require us to examine and interpret the terms of their agreement. The interpretation of a written contract raises a question of law that we decide independently of the circuit court. *Admanco, Inc. v. 700 Stanton Drive, LLC*, 2010 WI 76, ¶15, 326 Wis. 2d 586, 786 N.W.2d 759.

¶10      Whether public policy renders a contract void or unenforceable is also a question of law that we decide independently. *See Jezeski v. Jezeski*, 2009 WI App 8, ¶¶10-11, 316 Wis. 2d 178, 763 N.W.2d 176 (2008).

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## II. Di Renzo Did Not Have a Duty to Advise Freude Regarding Third-Party Claims Because the Retention Agreement Expressly Disclaims an Attorney-Client Relationship for Such Claims.

¶11 "[T]he rules governing contract formation determine whether [an attorney-client relationship] has been created." *Security Bank v. Klicker*, 142 Wis. 2d 289, 295, 418 N.W.2d 27 (Ct. App. 1987). "Attorneys have a burden to clearly draft their legal fee agreements." *Ziolkowski Patent Sols. Grp., S.C. v. Great Lakes Dart Mfg., Inc.*, 2011 WI App 11, ¶13, 331 Wis. 2d 230, 794 N.W.2d 253.[3] Here, the parties do not dispute that the Retention Agreement gave rise to an attorney-client relationship between Freude and Di Renzo. Moreover, Freude does not challenge the validity of the agreement or contend that it is unreasonable.[4] He does not develop an argument based on a lack of informed

---

[3] *See Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 508, 577 N.W.2d 617 (1998) ("Unlike attorneys, clients may not possess the legal acumen or experience necessary to understand the potential ramifications that a particular fee agreement may have on a lawsuit.").

[4] Limited scope representation is recognized in the Wisconsin Rules of Professional Conduct. Supreme Court Rule 20:1.2, entitled "Scope of representation and allocation of authority between lawyer and client," provides in relevant part:

> (c) A lawyer may limit the scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent….
>
> . . . .
>
> (2) If the client gives informed consent in writing signed by the client, there shall be a presumption that:
>
>> a. the representation is limited to the lawyer and the services described in the writing, and
>>
>> b. the lawyer does not represent the client generally or in matters other than those identified in the writing.

The Preamble to the Rules of Professional Conduct states that the rules "are not designed to be a basis for civil liability" and that "[v]iolation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has

(continued)

6

consent. He does not assert any ground to invalidate the agreement, such as misrepresentation, mistake, unconscionability, duress, undue influence, or incapacity.

¶12 In addition, the parties agree that the Retention Agreement permissibly sets forth the scope of their attorney-client relationship. In construing the agreement, our goal is "to give effect to the parties' intentions." *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586. "[T]he best indication of the parties' intent is the language of the contract itself," which "[w]e construe … according to its plain or ordinary meaning." *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476. We also "consider the language of the contract as a whole, and analyze contract clauses in context, as they are reasonably understood." *Ryan v. Ryan*, 2023 WI App 21, ¶12, 407 Wis. 2d 615, 990 N.W.2d 777 (citation omitted).

¶13 In the Retention Agreement, Di Renzo and Freude agreed that the firm was employed "solely to prosecute a worker's compensation claim on [Freude's] behalf and that the firm has not been employed to bring actions against third parties as a result of [Freude's] injury." Freude further agreed that he "acknowledge[s] and understand[s] that if the firm was to be employed to provide representation as to non-worker's compensation claims that a separate fee arrangement shall need [to] be agreed upon to compensate the firm for prosecution of such other claims." The parties agree that this language is unambiguous. Freude also acknowledges that he had the opportunity to read the agreement.

---

been breached." SCR Preamble, ¶20. However, "since the rules do establish standards of conduct by lawyers, a lawyer's violation of the rule may be evidence of breach of the applicable standard of conduct." *Id.* Freude does not contend that Di Renzo violated SCR 20:1.2(c).

¶14 Recognizing that a legal malpractice claim must be based on an attorney-client relationship, Freude contends Di Renzo's limited-scope representation gave rise to a duty to advise him about potential third-party claims and the applicable statutes of limitations. He contends the legal obligation falls "within the scope of [the] worker's compensation agreement." We reject this argument as it directly conflicts with the limited scope of Di Renzo's representation as set forth in the Retention Agreement. While the worker's compensation statute references third-party claims, *see* WIS. STAT. § 102.29(1)(a), here, the only fact submitted on summary judgment relating to the parties' entry into the Retention Agreement is the agreement itself.[5] In that agreement, the parties expressly agreed that the firm's representation was limited "solely" to the worker's compensation claim, specifically excluded "representation as to non-worker's compensation claims," and acknowledged that any such representation would need to be addressed in a separate retainer agreement. In short, because Di Renzo's representation under the Retention Agreement did not extend to claims against third parties, there is no legal relationship upon which to base a duty to provide Freude with advice regarding such claims.

¶15 Had the agreement only identified what Di Renzo's representation did encompass, Freude's argument that a duty to advise as to third-party claims arose nonetheless might be stronger, partly because of the close association of claims against employers and third parties in WIS. STAT. § 102.29. But by expressly carving third-party claims out of the scope of Di Renzo's engagement,

---

[5] Freude testified that he did not recall anything about the signing of the Retention Agreement.

the Retention Agreement eliminates the basis for a duty to give advice as to such claims.

¶16    The Retention Agreement's specification as to what Di Renzo's limited representation did not include is also in keeping with Wisconsin ethics guidance:

> When undertaking a limited scope representation, it is particularly important for the lawyer to clearly communicate to the client the limits of the representation. In most circumstances, in a limited scope representation it will be necessary for the lawyer to inform the client what services the lawyer will not provide to the client. This is because the representation often is limited in a manner that varies from what a client might typically expect, and this information must be communicated to the client.

State Bar of Wisconsin, Wisconsin Ethics Opinion E-09-03: Communications Concerning Attorneys' Fees and Expenses at 3 (2020).[6]   While this opinion provides ethical guidance and does not directly address the standard of care for a legal malpractice claim, it remains noteworthy that the Retention Agreement followed this guidance by clearly communicating to Freude that Di Renzo's representation was limited to the worker's compensation claim and that the firm was not representing him with respect to any third-party claims arising out of his injury.   That the agreement went this extra step takes on added significance because, as Freude argues, workplace injuries frequently give rise to both claims against employers under WIS. STAT. ch. 102 and claims against nonemployer third parties who may bear some responsibility for an employee's injury.   Here, the agreement notified Freude of the possibility of such third-party claims, informed

---

[6] A copy of this opinion is available at https://www.wisbar.org/formembers/ethics/Ethics%20Opinions/E-09-03.pdf.

him that Di Renzo was not representing him with respect to such claims, and instructed him what additional step would be needed to have Di Renzo undertake such representation.

¶17    Freude relies on two cases in which courts concluded that attorneys who represented clients with respect to worker's compensation claims nonetheless had a duty to advise their clients about potential claims against third parties.  In *Keef v. Widuch*, 747 N.E.2d 992, 1000 (Ill. App. Ct. 2001), for example, the court concluded that an agreement which stated only that the attorney was engaged to prosecute a claim under Illinois' worker's compensation statute did not foreclose a duty to advise as to third-party claims.  "Although a representation agreement may limit the scope of representation to a particular legal course of action," the court wrote, "the client must be made to understand that the course of action is not the sole potential remedy and that there exist other courses of action that are not being pursued." *Id.* at 998.  It noted that "the typical injured worker is uninformed about the possibility of a third-party action" and thus "relies upon his workers' compensation attorney to advise him of all the potential legal remedies." *Id.* Absent such advice, the court concluded, "the client is not informed about the limited scope of the attorney's representation." *Id.*; *see also Nichols v. Keller*, 19 Cal. Rptr. 2d 601 (Cal. Ct. App. 1993) ("[E]ven when a retention is expressly limited, … the attorney should inform the client of the limitations of the attorney's representation and of the possible need for other counsel.").

¶18    These non-Wisconsin authorities are materially distinguishable from the present case.  In *Keef* and *Nichols*, the representations were limited to pursuing worker's compensation claims.  Nothing in either case suggests that the attorneys advised their clients of the possibility of third-party claims, in writing or orally.  By contrast, in the present case, the Retention Agreement between Freude

and Di Renzo was *not silent* as to third-party claims; it specifically acknowledged their possible existence, expressly excluded them from Di Renzo's representation, and advised Freude that a separate fee arrangement would be needed before the firm would represent him with respect to those claims.[7]

¶19     Freude has not identified any case in which a legal malpractice claim based on a specifically excluded representation survived.  In contrast, our research identified several cases holding that when a retention agreement specifically negates the existence of an attorney-client relationship for certain work, there is no legal duty to provide advice or services beyond what is expressly included within the scope of representation.  *See, e.g.*, ***Lerner v. Laufer***, 819 A.2d 471, 483 (N.J. Super. Ct. App. Div. 2003) (explaining that what is required of an attorney "is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform.  [Thus], if the service is limited by consent, then the degree of care is framed by the agreed service." (citation omitted)).

¶20     For example, in ***Kohler v. Polsky***, 195 N.Y.S.3d 122 (N.Y. App. Div. 2023), an injured worker entered into a retainer agreement "which stated, inter alia, that he retained the defendants to represent him only in relation to a workers' compensation claim, and not for any other claims arising from the

---

[7] Neither the American Bar Association's Model Rules of Professional Conduct nor the rules of professional conduct applicable to attorneys in Illinois and California include the rebuttable presumption present in SCR 20:1.2(c)(2) that when a client gives informed written consent to a limited scope of representation, "the lawyer does not represent the client generally or in matters other than those identified in the writing." *See* MODEL RULES OF PRO. CONDUCT R.1.2 (AM. BAR ASS'N 2020); ILL. SUP. CT. R. 1.2 (2024); CAL. RULE OF PRO. CONDUCT 1.2 (2024). Here, even if one looked to SCR 20:1.2(c) for guidance (because there is no contention the rule was violated), a rebuttable presumption either would not be necessary because the retention agreement specifically disclaimed representation as to third-party claims or would be reinforced by the terms of the Retention Agreement.

accident." *Id.* at 123. The worker later filed a legal malpractice claim alleging that the defendants did not inform him "that he had potentially meritorious personal injury claims against certain third parties." *Id.* The appellate court affirmed a grant of summary judgment on the claim because there was no dispute that "the acts that they allegedly failed to perform were beyond the scope of the engagement letter" and malpractice liability could not be based on the attorney's failure to take action outside the scope of the engagement. *Id.* at 124; *see also Eichengrun v. Panasci*, 202 N.Y.S.3d 569, 573 (N.Y. App. Div. 2024) (affirming summary judgment for a law firm on claims arising out of the firm's alleged failure to obtain a stay pending potential appeal where the retainer agreement "explicitly limited the legal services to be provided … to the bankruptcy proceeding at the trial level" and "specifically excluded legal services for appeals and work in any other action or proceeding"); *Patel v. FisherBroyles, LLP*, 1 N.W.3d 308, 315 (Mich. Ct. App. 2022) (holding "that when an attorney and a client expressly limit terms of the attorney's representation, the duty imposed on the attorney for purposes of a legal malpractice action is limited to the agreed-upon scope of representation"), *appeal denied*, 994 N.W.2d 256 (Mich. 2023). We may look to case law from other jurisdictions in the absence of applicable Wisconsin precedent, *see State v. Harvey*, 2006 WI App 26, ¶20 n.7, 289 Wis. 2d 222, 710 N.W.2d 482, and here we find the analysis in these out-of-state cases compelling.

¶21 In sum, the Retention Agreement was not silent as to the possibility of a third-party claim, and the limitation excluding representation was very clear. Under the undisputed material facts of this case, the circuit court correctly concluded that Di Renzo may not be held liable for failing to act outside the scope of the agreement.

### III. Public Policy Does Not Give Rise to a Duty to Advise in This Case.

¶22   We further reject Freude's undeveloped invitation to recognize, as a matter of public policy, a duty to advise clients about potential third-party claims even though the terms of a written retainer agreement expressly exclude representation as to such claims.[8]   As noted above, Wisconsin permits limited-scope representation agreements if they are reasonable.  *See* SCR 20:1.2.  Though Freude agrees the Retention Agreement is valid, he effectively asks this court to override enforcement of his contractual agreement to exclude third-party claims from Di Renzo's representation.

¶23   Wisconsin favors enforcing a contract agreed to by competent parties, and a court will set a contract aside "on grounds of public policy only in cases free from doubt," *Northern States Power Co. v. National Gas Co.*, 2000 WI App 30, ¶8, 232 Wis. 2d 541, 606 N.W.2d 613 (1999), such as where the contract "violates a statute, a rule of law or public policy," *Jezeski*, 316 Wis. 2d 178, ¶11.  Public policy refers to the "principle of law under which freedom of contract or private dealings is restricted by law for the good of the community." *Merten v. Nathan*, 108 Wis. 2d 205, 213, 321 N.W.2d 173 (1982) (citation omitted).  It may be embodied in statutes, administrative rules, or common law.  *Rosecky v. Schissel*, 2013 WI 66, ¶¶68-69, 349 Wis. 2d 84, 833 N.W.2d 634; *Northern States*, 232 Wis. 2d 541, ¶8.

¶24   Here, Freude fails to identify any statute, regulation or judicial opinion in Wisconsin that gives rise to a public policy that would override

---

[8] We address Freude's public policy argument for the sake of completeness even though he did not raise it in the summary judgment briefing before the circuit court.

enforcement of the contractual terms of the parties' attorney-client relationship. Absent any legal authority to support Freude's argument, we decline to create a new public policy obligation that would override the parties' contractual agreement to limit the scope of representation to exclude third-party claims.[9]

## CONCLUSION

¶25     For the reasons stated above, the circuit court correctly granted Di Renzo's summary judgment motion and dismissed Freude's legal malpractice claim.    Freude has failed to establish an essential element of his claim—an attorney-client relationship—under the parties' limited scope agreement whereby the law firm's representation was limited solely to worker's compensation claims and expressly excluded representation with respect to third-party claims.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.

---

[9] Because our decision affirms the grant of summary judgment on Freude's legal malpractice claim based on the terms of the Retention Agreement, we need not address Di Renzo's additional contentions regarding the merits of Freude's claim. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (we need not address other issues when one is dispositive of the appeal).

No.   2023AP764(D)


¶26   GROGAN, J.   (*dissenting*).  To succeed on a claim of legal malpractice, a plaintiff must establish:  (1) the existence of an attorney-client relationship; (2) that the attorney acted negligently; and (3) that the attorney's negligence caused the client's injury.  ***Skindzelewski v. Smith***, 2020 WI 57, ¶9, 392 Wis. 2d 117, 944 N.W.2d 575.  "[T]o prove causation and injury, a plaintiff must show that 'but for the negligence of the attorney, the client would have been successful in the prosecution or defense of an action.'"  ***Id.*** (citation omitted).  In other words, the plaintiff must "prove a case within a case"—"that, but for his lawyer's negligence, the civil case would have succeeded."  ***Id.***

¶27   Pursuant to the terms of the Worker's Compensation Representation Agreement (Agreement), Michael Freude hired Attorney Jeffrey M. Berzowski and his firm, Di Renzo & Bomier LLC, (collectively "Berzowski" unless otherwise noted) to represent him in regard to a worker's compensation claim.  In the Agreement, the parties confirmed that if Freude sought to engage Berzowski to also represent him as to certain other types of claims, it would be necessary to enter into an additional agreement:

> I understand that the firm is being employed solely to prosecute a worker's compensation claim on my behalf and that the firm has not been employed to bring actions against third parties as a result of my injury, the date of which is set forth above, nor is the firm being employed to prosecute any employment related claims arising under state or federal law.  I acknowledge and understand that if the firm was to be employed to provide representation as to non-worker's compensation claims that a separate fee arrangement shall need to be agreed upon to compensate the firm for prosecution of such other claims.

Berzowski's representation on the worker's compensation claim ended on December 5, 2017, and the letter informing Freude that Berzowski was withdrawing his representation made no mention of third-party claims and referenced a statute of limitations only in regard to the worker's compensation claim. After obtaining new counsel and discovering the third-party claim statute of limitations had run, Freude filed a legal malpractice claim against Berzowski asserting that Berzowski knew that a third-party claim existed, that Berzowski knew that the statute of limitations on such claims would run in the near future, and that Berzowski negligently failed to provide Freude with this information.

¶28 The Majority, despite recognizing "that the Retention Agreement gave rise to an attorney-client relationship," nevertheless affirms the circuit court's grant of summary judgment[1] in Berzowski's favor because it concludes that only a *specific type* of attorney-client relationship existed and that that relationship was in regard to the worker's compensation claim only. Majority, ¶¶1, 11. Thus, it says, in light of the limited-scope agreement, there was no attorney-client relationship as to a *third-party claim*, and therefore Freude, as a matter of law, could not assert a legal malpractice action against Berzowski related to a third-party claim at all. Majority, ¶1. In this particular context, I conclude that in entering this Agreement, the parties entered into an attorney-client relationship, thus establishing the first

---

[1] In granting summary judgment in Berzowski's favor, the circuit court primarily focused on the terms of the Agreement as of the time that it was signed. Specifically, the court looked to "what that initial consultation would have led to; whether that initial consultation that resulted in the retainer agreement would have given indication of a third-party injury" and determined that the information at the time of the initial consultation was such that it would not "have triggered a third-party case." It therefore determined that "there is a presumption that the implied consent or informed consent [was] done appropriately[]" and that the Agreement "did carve out no obligation with respect to third-party claims such that there would not have been any reasonable notice or advice on those issues."

2

element of a legal malpractice claim, and that the role of the limited-scope Agreement is instead more properly addressed within the context of the second legal malpractice element—negligence.

¶29 Consideration of a limited-scope agreement in the context of the negligence element rather than in determining whether an attorney-client relationship existed as to a specific type of claim serves the purpose of both acknowledging that an attorney-client relationship exists while *also* cabining the negligence analysis within the context of the limited-scope agreement itself. Such a framework protects both the client and the attorney—the client, who is reliant upon the attorney's skill and training, can reasonably expect the attorney to *share information* he learns during the representation that may give rise to a different type of inter-related claim, while an attorney facing a legal malpractice claim wholly unrelated to the type of claim addressed by the limited-term agreement can point to such an agreement in establishing he did not act negligently.[2]

¶30 Applying this framework here, the question of whether Berzowski was negligent would depend on whether Berzowski, during the course of investigating the worker's compensation claim, knew of facts that could potentially support a third-party claim. Given the close relationship between

---

[2] For example, it is not entirely unlikely that an attorney hired to represent a client in regard to a worker's compensation matter may obtain information during that representation that would lead the attorney to believe the client may have a viable third-party claim, whereas it is far less likely that that same attorney would obtain information during that representation that would suggest a possible claim for theft by contractor that is wholly unrelated to the workplace injury. If the client at some point learned that he had a possible theft by contractor claim and asserted a legal malpractice claim against his worker's compensation attorney, that attorney could then point to the limited-scope agreement to argue that he was unaware of such information because it was unrelated to the claim he was hired to prosecute and that he could not have been negligent for failing to provide such information.

worker's compensation claims and third-party liability claims—as evidenced by WIS. STAT. § 102.29—an attorney investigating one type of claim might become aware of information that would support the other claim. This is particularly true when the attorney specializes in both worker's compensation and third-party related claims. Under such circumstances, failing to share that information with the client as the attorney terminates the relationship may fall on the side of negligence—even where the parties have otherwise entered a limited-scope agreement.

¶31    To be clear, an attorney representing a client under a limited-scope agreement does not have an affirmative duty to *investigate or bring claims* that are clearly beyond the scope of that agreement.[3]   However, the attorney who has information about a third-party claim in a worker's compensation case should not withhold that information from a client with whom he is terminating representation. This is particularly so where the limited-scope agreement such as the one at issue in this case *specifically references* other types of potential claims.

¶32    Here, for example, while the Agreement limited Berzowski's representation to the worker's compensation claim and explained that Berzowski had "not been employed to *bring actions* against third parties as a result of

---

[3] In reaching this conclusion, I reject Freude's argument that "[a] limited scope representation agreement for workers' compensation cannot, as a matter of law, relieve an attorney of his duty to *investigate* the potential for third-party claims and alert his client to such claims." (Emphasis added.)  While an attorney representing a client on a worker's compensation claim pursuant to a limited-scope agreement such as the one at issue here may ultimately obtain information related to a possible third-party claim—at which point an attorney may be obligated to share that information with the client—I do not agree that an attorney operating under such an agreement would have an affirmative duty to *investigate* a third-party claim if the agreement itself specifically excluded third-party claims (or other types of claims) from the scope of representation.

[Freude's] injury," it also specifically referenced the need for an additional retainer should Berzowski "be employed to provide representation as to non-worker's compensation claims[.]" (Emphasis added.) This at least suggests that had Berzowski *become aware* of information that would support other types of claims that he would then share that information with Freude so the parties could determine whether or not to enter into an additional agreement. In the absence of Berzowski having shared such information, Freude could reasonably have assumed that no such additional claim existed and therefore no additional agreement would be necessary.[4] Furthermore, the Agreement specifically stated that Berzowski had not been hired "*to bring actions* against third parties" stemming from Freude's work-related injury. (Emphasis added.) It should go without saying that sharing information with a client about the possible existence of a claim is simply not the equivalent of *bringing an action*, particularly where an agreement contemplates the necessity for additional agreements.

¶33 Based on the foregoing, I would therefore conclude that an attorney-client relationship existed and that there remains a question of fact as to whether Berzowski was negligent in failing to inform Freude about the potential existence of a third-party claim and the corresponding statute of limitations at the time Berzowski terminated his representation. Because I conclude a question of fact remains, I would reverse the circuit court's grant of summary judgment and remand for further proceedings to determine what, if anything, Berzowski knew

---

[4] The Majority suggests that the Agreement's statement that Berzowski had "not been employed to bring actions against third parties" was sufficient to apprise Freude of the possible existence of third-party claims: "[T]he agreement notified Freude of the possibility of such third-party claims[.]" Majority, ¶16. I disagree. With the termination of representation, any information known to the attorney about the possible third-party claim should have been disclosed.

about the possibility of a third-party claim at the time the representation ended and whether Freude could establish the remaining elements necessary to establish legal malpractice. Accordingly, I respectfully dissent.